# United States Court of Appeals
## For the First Circuit

Nos. 07-2209, 08-2308

UNITED STATES OF AMERICA,

Appellee,

v.

JEROME WEEKES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker,  U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,*
and Stahl, Circuit Judge.

Stephen B. Hrones, with whom Hrones & Garrity was on brief, for appellant.
John M. Pellettieri, U.S. Department of Justice, with whom Lanny A. Breuer, Assistant Attorney General, Gary G. Grindler, Deputy Assistant Attorney General, Carmen M. Ortiz, United States Attorney, and Christopher F. Bator, Assistant United States Attorney, were on brief, for the United States.

July 9, 2010

---

* The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>**.  Appellant Jerome Weekes and his associate Kelvin Brown were thrown out of a bar after arguing with another patron.  Brockton Police Officer Michael Darrah, who was working as paid security at the bar, heard gunshots coming from their direction, called for backup, and gave chase.  Darrah caught Brown as he and Weekes were trying to jump a fence.  Weekes cleared the fence but was arrested by another officer a moment later.  A search turned up Weekes's cell phone and a loaded gun near where he had landed, and two spent shell casings in the area from which Darrah believed the sounds of shooting had come.

Weekes was indicted on one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g), and was found guilty by a jury.  The district court sentenced him to 15 years' imprisonment under the Armed Career Criminal Act, 18 U.S.C. § 924(e).  We have consolidated his direct appeal of the conviction and sentence with his appeal from denial of collateral relief under 28 U.S.C. § 2255.

Weekes first claims a violation of his Sixth Amendment right to a jury drawn from sources reflecting a fair cross section of the community.  <u>See</u> <u>Taylor</u> v. <u>Louisiana</u>, 419 U. S. 522 (1975).  To make out a prima facie violation of the fair-cross-section requirement, a defendant must show, among other things, that the alleged "underrepresentation is due to systematic exclusion of the group in the jury-selection process."  <u>Duren</u> v. <u>Missouri</u>, 439 U.S.

357, 364 (1979). Weekes's evidence on this point, simply his lawyer's observation that there were apparently no African-Americans in the venire, plainly did not suffice to demonstrate the requisite systematic effort, and the district court properly rejected the claim. The later decision by the District Court of Massachusetts to establish a new juror selection plan avails Weekes nothing; this court previously held that the plan in effect at the time of Weekes's trial complied with the Sixth Amendment, see In re United States, 426 F.3d 1, 8 (1st Cir. 2005) (citing United States v. Royal, 174 F.3d 1, 10-11 (1st Cir. 1999)), and even if this panel had the authority (which it lacks) to overrule the prior holding, nothing in the record would support doing that.

Next, Weekes challenges several evidentiary rulings, to some of which he objected and to some did not. Where he preserved the issue, we review the district court's ruling for abuse of discretion, and will not reverse if the error was harmless, that is, if it is highly probable that the error did not contribute to the verdict. United States v. Scott, 270 F.3d 30, 46 (1st Cir. 2001). If the objection was not preserved, review is for plain error. Id.

First, the district court did not permit Weekes to cross-examine Agent Stephanie Schafer about testing for gunpowder residue, finding such questioning to be outside the scope of her direct testimony. The court did, however, let Weekes cross-examine

two other witnesses on the subject and said he could question a third if subpoenaed as a defense witness. There is no abuse of discretion here, and certainly no possibility of harm.

Second, the district court ruled that photographs of Brown with injuries sustained the night of his arrest were admissible during Weekes's testimony only if the Government cross-examined him about the harm Brown sustained. The Government did not do that, and the photographs stayed out. But again, the court provided Weekes with an opportunity to offer the evidence through another witness, ruling (at Weekes's request) that the photos could come in during the testimony of Brockton Police Officer Edward Abdelnour. Under these circumstances, not to mention that the testimony of Weekes and Officer Darrah about Brown's injuries left the photographs largely cumulative, any error in excluding the photographs during Weekes's testimony was harmless.

Third, the district court permitted the Government to impeach Weekes by asking him about his use of such nicknames as "Ice" and "Unk" and about his use of false social security numbers. Review here is only for plain error, and we find none. The testimony about the social security numbers obviously went to credibility and was therefore admissible under Federal Rule of Evidence 608(b). The relevance to Weekes's truthfulness of what the Government calls his "aliases" may be less clear, but we do not

see (and Weekes has not explained) how the jury's awareness of these particular nicknames could possibly have caused him harm.

Fourth, the district court did not allow Weekes to testify that Brown had told him that he (Brown) had picked up the gun after it was dropped from a passing vehicle from which the two had been fired upon. Weekes argues that this statement is not excludable under the hearsay rule because it was a statement against penal interest and Brown was unavailable to testify at trial. See Fed. R. Evid. 804(b)(3). The sticking point here is the required showing of Brown's unavailability, and we do not think Weekes has demonstrated abuse of discretion in the district judge's finding that Weekes had not "show[n] at least a good faith effort to procure the witness'[s] attendance," a standard we have described as "relatively high." United States v. Mann, 590 F.2d 361, 367 (1st Cir. 1978). He apparently did try to find Brown through Brown's friends and family, but he neither subpoenaed Brown at his last known address nor sought help from the district court, local law enforcement, or, curiously, Brown's counsel in the state court action in which the two were co-defendants. See id. (good faith standard "cannot be satisfied by perfunctory efforts"). Weekes runs into the further admissibility problem that he has not established that "corroborating circumstances clearly indicate the trustworthiness of the [out-of-court] statement." Fed. R. Evid. 804(b)(3). It is not enough to point, as Weekes does, to evidence

-5-

that Brown made the statement; "there must be indicia of trustworthiness of the specific, essential assertions" to be repeated, United States v. Mackey, 117 F.3d 24, 29 (1st Cir. 1997) (internal quotation marks omitted), and Weekes points to none. There was no abuse of discretion in excluding Brown's hearsay.

Weekes's rejoinder is that, if this is so, his trial counsel must have been constitutionally ineffective for failing to scale the barriers to admitting the hearsay raised by Rule 804(b)(3). But in accordance with usual practice, we decline to review this claim as part of Weekes's direct appeal, see United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993), and we find it likewise unsuitable for review in the present consolidated appeal from denial of § 2255 relief. We have long recognized that "in the absence of extraordinary circumstances, the orderly administration of criminal justice precludes a district court from considering a §2255 motion while review of the direct appeal is still pending." United States v. Gordon, 634 F.2d 638, 638 (1st Cir. 1980) (internal quotation marks omitted). No such extraordinary circumstances existed here, as the district court found. Thus, to the extent the district court construed Weekes's "request for ruling on claim of ineffective assistance of counsel" as a petition for relief under § 2255 and proceeded to rule on its merits, the ruling was premature; the district court should have dismissed it

without prejudice.  See United States v. Diaz-Martinez, 71 F.3d 946, 953 (1st Cir. 1995).[1]

Finally, Weekes challenges his sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  The ACCA mandates a 15-year minimum prison term for a defendant convicted of being a felon in possession of a firearm if the defendant has "three previous convictions . . . for a violent felony or a serious drug offense, or both."  § 924(e)(1).  Weekes denies that he has three qualifying convictions, an issue subject to de novo review to the extent properly preserved, United States v. Pakala, 568 F.3d 47, 54 (1st Cir. 2009), and plain error review to the extent it was not, United States v. Duval, 496 F.3d 64, 84 (1st Cir. 2007).

Two of Weekes's convictions were for drug offenses in violation of Massachusetts law.  They qualify as "serious drug offense[s]" under the ACCA if "a maximum term of imprisonment of ten years or more is prescribed by law."  § 924(e)(2)(A)(ii).  Weekes acknowledges that his crimes were potentially punishable by ten years' imprisonment, but calls this irrelevant because he was in each instance tried in the alternative prosecutorial venue of a state district court, see Mass. Gen. Laws ch. 218, § 26, which was not authorized to sentence higher than two and one-half years.  See

---

[1] In light of this disposition, we need not address the consequences of Weekes's failure to request a certificate of appealability.  Cf. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007).

Mass. Gen. Laws ch. 218, § 27 and ch. 279, § 23.  But we rejected this argument in United States v. Moore, 286 F.3d 47, 49 (1st Cir. 2002), and see nothing in the Supreme Court's intervening decision in United States v. Rodriquez, 553 U.S. 377 (2008), to require us to revisit the issue.  On the contrary, Rodriquez instructs us to look to "the maximum term prescribed by the relevant criminal statute," id. at 391, rather than external limitations on "the term to which the state court could actually have sentenced the defendant" in a particular case, id. at 390.  The limits came from a mandatory guidelines regime in Rodriquez, id., but there is no apparent reason for a different rule when the restriction on a court's sentencing authority is more general, as here.  We therefore see no error, much less the plain error that Weekes must show as to these convictions, in the district court's conclusion that these offenses were serious drug offenses under the ACCA.

The district court also counted Weekes's state conviction for resisting arrest, see Mass. Gen. Laws ch. 268, § 32B, as an ACCA predicate, which it was if resisting arrest is soundly categorized as a "violent felony" under that statute.  In United States v. Almenas, 553 F.3d 27, 32-35 (1st Cir. 2009), we held that resisting arrest qualified as a "crime of violence" under U.S.S.G. § 4B1.2, and because that Guideline and the ACCA are similarly worded, our holding in Almenas applies here to treat Weekes's conviction as a violent felony under the statute.  See id. at 34

-8-

n.7.  Weekes argues that Almenas is no longer good law following the Supreme Court's decision in Chambers v. United States, 129 S.Ct. 687 (2009), which he says requires separate consideration of the two types of conduct proscribed by the Massachusetts statute. See Mass. Gen. Laws ch. 268, § 32B (covering use or threat of force and  creation of substantial risk of bodily injury).  But that is what we did in Almenas; Weekes's argument is off the mark.

Weekes further suggests that, because stiffening one's arms or fleeing willfully can qualify as resisting arrest in Massachusetts, we must look at the record of his conviction to determine if his conduct was in fact violent.  See Shepard v. United States, 544 U.S. 13 (2005).  But in Almenas, we rejected this argument, which is at odds with the categorical method for identifying qualifying felonies, 553 F.3d at 35 & n.9, and we do not read Chambers to undermine our reasoning.  In any event, arm movement and flight by an arrestee of the type that would violate the Massachusetts statute strikes us as more akin to escape than the failure to report that Chambers held not to be a violent felony.  See Chambers, 129 S.Ct. at 691 ("The behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody."); Commonwealth v. Montoya, 73 Mass. App. Ct. 125, 130, 896 N.E.2d 638, 642 (2008) (construing § 32B to reach "a defendant's flight where the

circumstances of such flight expose his pursuers to a 'substantial risk of bodily injury'" but not "mere flight on foot from arrest" (emphasis omitted)); see also United States v. Pratt, 568 F.3d 11, 22 (1st Cir. 2009) (holding that escape from secure custody is a violent felony).

Because the two drug offenses and conviction for resisting arrest provide the three necessary predicates for the application of an ACCA minimum sentence, there is no need to consider whether the conviction for assault and battery would also qualify in the aftermath of Johnson v. United States, 130 S.Ct. 1265 (2010).

We **affirm** the district court's judgment of conviction and sentence in Appeal No. 07-2209. We **affirm** the order in part and **vacate** in part in Appeal No. 08-2308, and we **remand** the case for further proceedings consistent with this opinion.

**So ordered.**