FILED
United States Court of Appeals
Tenth Circuit

August 26, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MARCUS DEON COLEMAN,

Defendant-Appellant.

No. 10-6134

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 5:09-CR-00259-C-1)**

---

Michael S. Johnson, Oklahoma City, Oklahoma, for Appellant.

Jonathon E. Boatman, Assistant United States Attorney (Sanford C. Coats, United States Attorney, and Ashley L. Altshuler, Assistant United States Attorney, with him on the brief), Office of the United States Attorney, Oklahoma City, Oklahoma, for Appellee.

---

Before **MURPHY**, **BRORBY**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

This appeal requires us to determine whether drug-trafficking convictions

that are initially adjudicated under Oklahoma's Youthful Offender Act qualify as

"serious drug offenses" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). We conclude they do, and affirm.

## I. Background

Marcus Deon Coleman's extensive criminal history began in 1998, when he was thirteen years old. He was convicted of selling crack cocaine and marijuana on three separate occasions in 2002, in violation of Oklahoma's Trafficking in Illegal Drugs Act, OKLA STAT. tit. 63, § 2-414–20 (2002).[1] Because he was between the ages of 16 and 17 when he committed these crimes, the state court adjudicated him under Oklahoma's Youthful Offender Act, OKLA. STAT. tit. 10, §§ 7306-2.1–2.13 (2002) (YOA).[2] Coleman received a sentence of 10 years' confinement for each conviction, the maximum sentence permitted under the YOA. *See id.* § 7306-2.9(B). He was then placed in the custody of the Oklahoma Department of Juvenile Affairs (OJA).

Coleman escaped from OJA custody in 2003. After he was rearrested in 2004, a state judge converted the prior YOA sentences to adult convictions and

---

[1] Coleman was convicted of drug trafficking a fourth time, in 2004, based on his statements and evidence gathered when he was rearrested. He pleaded guilty and was sentenced to 10 years' imprisonment, to be served concurrently with his other sentences. Because Coleman was already 18 when he was rearrested, this conviction is not material to the question presented in this case.

[2] In 2009, Oklahoma amended and recodified its Youthful Offender Act at OKLA. STAT. tit. 10A, § 2-5-201. The parties agree the 2002 version of the Act was in effect at the time Coleman committed the offenses.

committed him to the custody of the Oklahoma Department of Corrections to serve the remainder of his sentences. Coleman was paroled in 2007.

In 2009, Coleman pleaded guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Coleman's presentence report determined his drug-trafficking convictions qualified as "serious drug offenses" under the ACCA and recommended the application of the armed career offender guideline, United States Sentencing Guideline (USSG) §4B1.4(b). Under the ACCA, Coleman's minimum term of imprisonment is 15 years. The district court sentenced Coleman to 20 years' imprisonment.

Coleman timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II. Discussion

We review the interpretation of the Guidelines de novo. *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010). Coleman contends his drug-trafficking convictions as a youthful offender cannot constitute serious drug offenses under the ACCA. And because a youthful offender whose adjudication is converted to an adult conviction can only be sentenced to the *remainder* of his original sentence, Coleman concludes his adult convictions are not serious drug offenses, either. We disagree on both counts.

## A. The ACCA and Oklahoma's Youthful Offender Act

Federal law prohibits a felon from possessing a firearm that has traveled in interstate commerce. 18 U.S.C. § 924(g). When an individual convicted under § 924(g) has three previous convictions for violent felonies or serious drug offenses, the ACCA mandates a 15-year minimum sentence. *Id.* § 922(e)(1). A "serious drug offense" includes a state law offense involving the distribution of a controlled substance where "a maximum term of imprisonment of ten years or more is prescribed by law." *Id*. 922(e)(2)(A)(ii). Thus, the ACCA defers to the judgment of state legislatures—as evinced in the states' sentencing policies—to measure the seriousness of a drug offense. *See United States v. Rodriquez*, 553 U.S. 377, 388 (2008).

The criminal prosecution of minors in Oklahoma is governed by the YOA, which at the time of Coleman's crimes was codified at OKLA. STAT. tit. 10, § 7306-2.1–2.13 (2002). Under the Act, 16- and 17-year-olds who are charged with drug trafficking are treated as youthful offenders. *Id.* § 7306-2.6. Youthful offenders are tried similarly to adult defendants, but they are placed in OJA custody and their maximum sentences ordinarily cannot exceed 10 years' confinement. *See id.* § 7306-2.9. Under certain circumstances, such as when a court determines a youthful offender would not reasonably complete a rehabilitation plan, an adult sentence can be imposed. *Id.* § 7306-2.8. If an

individual is sentenced as a youthful offender but subsequently escapes from a juvenile facility, a court may

> impose the remainder of the sentence as provided by law for an adult punishment of the offense committed . . . including transfer of the youthful offender to the custody or supervision of the Department of Corrections for the remainder of the youthful offender sentence.

*Id.* § 7306-2.10(F)(5). Finally, § 7306-2.10(H) specifies, "[a]n order transferring custody of a youthful offender to the Department of Corrections shall result in an adult conviction and shall be a final order."

## B. Coleman's Convictions

Coleman contends the drug-trafficking crimes he committed as a juvenile cannot constitute serious drug offenses under the ACCA. His reasoning is as follows: the maximum sentence a youthful offender can receive is 10 years' imprisonment.[3] If a juvenile conviction is converted to a criminal conviction, then the maximum sentence of the adult conviction is 10 years minus the time served in OJA custody. And because the resulting adult conviction will always be less than 10 years, it follows the conviction cannot be for a serious drug offense.

---

[3] During oral argument, Coleman's counsel contended for the first time that the state court acted inappropriately when it sentenced Coleman to 10 years' confinement, because youthful offenders should actually be sentenced only to rehabilitation plans of indeterminate length. This argument is inconsistent with the plain language of the Youthful Offender Act. *See* OKLA. STAT. tit. 10, § 7306-2.9(B) (2002) ("[T]he court shall impose sentence as a youthful offender. In no event shall the sentence exceed the amount of time of a possible sentence of an adult convicted of the same offense or ten (10) years, whichever is less."). Since Coleman did not raise this argument in his briefs, we do not consider it here.

We cannot accept this logic. To determine whether a conviction is for a serious drug offense, the Supreme Court tells us to first look to "the maximum term prescribed by the relevant criminal statute, not the top of a sentencing guidelines range" or other external limitations on "the term to which the state court could actually have sentenced the defendant." *Rodriquez*, 553 U.S. at 390–91. A review of case law supports our conclusion that the relevant criminal statute in this case is the Trafficking in Illegal Drugs Act, not the YOA.

Although no circuit has addressed the precise question in this case, the closest precedent is *United States v. Weekes*, 611 F.3d 68, 72 (1st Cir. 2010), *cert. denied*, 180 L. Ed. 2d 850 (2011). In *Weekes*, the First Circuit held that two of the defendant's prior convictions were for serious drug offenses under the ACCA, even though the defendant could not have received 10-year sentences for those crimes. The defendant had been tried in state district court, which was not authorized by statute to impose a sentence of more than 2.5 years' imprisonment. *Id.* But Massachusetts law authorized a potential sentence of 10 years' imprisonment for the defendant's crimes if he had been prosecuted in a different state court venue. *Id.* Although the Supreme Court's decision in *Rodriquez* arose from a mandatory guidelines regime, the *Weekes* court concluded, "there is no apparent reason for a different rule when the restriction on a court's sentencing authority is more general, as here." *Id.*

We reached a similar conclusion in *United States v. Hill*, 539 F.3d 1213, 1221 (10th Cir. 2008). In that case, we found the phrase "crime punishable by imprisonment for a term exceeding one year" in 18 U.S.C. § 922(g)(1) focuses on "the maximum punishment for *any* defendant charged with that crime," not the characteristics of a particular offender. *Id.* So although the *Hill* defendant only faced a maximum sentence of eleven months' imprisonment under state law, based on the severity level of his crime and his criminal history, see *id.* at 1218, we upheld his conviction for being a felon in possession of a firearm. In doing so, we adopted an interpretation of § 922(g)(1) that is crime-centered, rather than defendant-centered. *See United States v. Jones*, 195 F.3d 205, 207 (4th Cir. 1999) (determining the statutory maximum for a state felon-in-possession conviction on the basis of the maximum statutory sentence for the offense class, not the defendant's prior criminal-record status).

We interpret the ACCA's definition of a serious drug offense similarly. Here, the maximum punishment for *any* defendant charged under Oklahoma's Trafficking in Illegal Drugs Act is life imprisonment. *See* OKLA STAT. tit 63, § 2-415 (2002). The YOA does not specify a term of imprisonment for drug-trafficking convictions; it merely sets sentencing limitations on certain types of defendants (i.e., juveniles). As with *Hill*, Coleman's sentence limits are based solely on his individual characteristics, not the offense itself. *See* 539 F.3d at 1221. And because the YOA only affects "the term to which the state court could

actually have sentenced the defendant," *Rodriquez*, 553 U.S. at 390, it is not relevant to the question of whether drug trafficking in Oklahoma constitutes a serious drug offense.[4]

Coleman contends *Rodriquez* and *Hill* are not germane because they apply only to adult convictions, but he cites no case law supporting his assertion that juvenile convictions cannot demonstrate serious drug offenses. Coleman's position is also contrary to the plain language of the ACCA, which provides a mandatory 15-year sentence based on three previous convictions "for a violent felony or serious drug offense." 18 U.S.C. § 924(e)(1). The definition of serious drug offense contains no exceptions for juveniles; it is based entirely on the maximum term of imprisonment prescribed by law. *See id.* § 924(e)(2)(A). In contrast, "violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use of or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, [involving physical force or certain specific crimes]." *Id.* § 924(e)(2)(B).

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*,

---

[4] Nor are we persuaded by Coleman's argument that his time served in juvenile custody should not be counted in determining whether he could face 10 years' imprisonment. Again, we look to the offense and not the actual sentence when determining whether a crime is a serious drug offense. And we certainly do not look to the place or status of confinement.

503 U.S. 249, 253–54 (1992). The ACCA's differing definitions show that Congress knows how to include or exclude juvenile status when it so desires. It made a choice, when defining violent felonies, to include juvenile delinquencies only when they involve certain dangerous weapons, thereby excluding schoolyard brawls and other unarmed altercations that could be prosecuted as violent felonies if committed by adults. In contrast, juvenile convictions for serious drug offenses do not need special treatment because the requirement that they be punishable by 10 years' imprisonment—ten times the sentence length for a violent felony—ensures they are sufficiently grave to justify the ACCA's 15-year minimum sentence.

Furthermore, the YOA permits an eligible youthful offender to receive an adult sentence under certain circumstances, *see* OKLA STAT. tit. 10, § 7306-2.8. Thus, Coleman could have received adult sentences in excess of 10 years in his initial adjudications. And, of course, Coleman could—and did—receive 10-year sentences, even as a youthful offender. But even if Oklahoma law did not permit a youthful offender to receive a 10-year sentence, Coleman's crimes would still constitute serious drug offenses because the ACCA does not exclude drug-trafficking convictions simply because they are committed by a juvenile. Instead, we look to the relevant criminal statute, not an external limit on a court's sentencing authority, to determine whether a violation of state law constitutes a serious drug offense under the ACCA.

In summary, because the relevant criminal statute in this case, Oklahoma's Trafficking in Illegal Drugs Act, carries a maximum sentence of life imprisonment, the district court did not err in determining Coleman's drug-trafficking convictions are serious drug offenses.

### III. Conclusion

We affirm Coleman's sentence.