[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-11087
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEP 29, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:08-cr-00393-TWT-RGV-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JEROME JULIUS WEEKS,
a.k.a. Clarence Royden Weekes,
a.k.a. Jerome J. Weekes,
a.k.a. Jerome Week,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 29, 2011)

Before EDMONDSON and PRYOR, Circuit Judges, and HOPKINS,[*] District Judge.

PER CURIAM:

Jerome Julius Weeks appeals his convictions and sentences for being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(e)(1), and for making false statements on an application for a firearm, id. § 924(a)(1)(A). Weeks argues that he never consented to the warrantless search of his residence and that the evidence that was seized during that search should have been suppressed. Weeks also argues that his sentence is both procedurally and substantively unreasonable. We affirm.

## I. BACKGROUND

A jury in Massachusetts federal court convicted Weeks of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and Weeks failed to appear at his sentencing hearing. Weeks had fled to Atlanta, Georgia, and the Massachusetts court issued a warrant for his arrest. While a fugitive from justice, Weeks purchased a pistol from a pawn shop by presenting a false identification and making false statements on a form required by the Bureau of Alcohol, Tobacco, and Firearms. Three weeks later, Weeks purchased another pistol from a different

---

[*]Honorable Virginia Emerson Hopkins, United States District Judge for the Northern District of Alabama, sitting by designation.

pawn shop and again presented the false identification and made false statements on the required form.

Debra Edmonds, Weeks's cohabitating girlfriend and the mother of one of his children, traveled from Massachusetts to join Weeks in Atlanta. Weeks and Edmonds resided at an apartment that had been leased by Latasha Woods, the mother of Weeks's other child, but Woods was not living at the apartment while Weeks and Edmonds were residing there. Weeks and Edmonds shared one key to the apartment and Woods kept the other key.

Edmonds's mother called the office of the United States Marshals in Massachusetts and told the Marshals the street address of the apartment complex, but not the specific apartment, where Weeks and Edmonds were residing. The lead deputy responsible for the search in Atlanta for Weeks, Deputy Wendell Brock, conducted searches of utilities records for Weeks and Edmonds. The searches led Deputy Brock to a specific apartment in the apartment complex, where he conducted surveillance after he saw a photograph of Weeks.

Deputy Brock observed Weeks entering and exiting an apartment on at least two occasions. Deputy Brock assembled a team of agents to arrest Weeks at about 6:30 a.m. at the apartment. When the team arrived at the apartment complex, four agents monitored the perimeter of the building. The other agents knocked on the

3

door of the apartment and yelled "police," but no one answered. One of the agents who was located at the perimeter of the building saw someone inside the apartment at a window, and the agent yelled "he's at the window." The agent then yelled at the person in the window to go open the front door. The agents at the front door then forced the door open and found Edmonds with her two children in the living room. Deputy Brock testified that Edmonds said that Weeks would not allow her to answer the door and then gestured with her head toward the bedroom.

When the agents entered the bedroom, they first searched for Weeks under a mattress and around a bed. One of the agents noticed an open drawer of the nightstand next to the bed and a box of ammunition in plain view in the drawer. The agents then found Weeks hiding in the closet.

Edmonds remained inside the apartment after the agents arrested Weeks and removed him from the apartment. Edmonds had calmed down from her initial excited state. The agents explained to Edmonds that they were concerned for the safety of her children because they thought that there might be a firearm in the residence.

Edmonds verbally consented to a search of the apartment. The search produced several incriminating items: two loaded pistols in a dresser drawer; an empty holster in the nightstand drawer; identifications that had Weeks's picture,

4

but the name "Clarence Weeks," not "Jerome Weeks"; a receipt for one of the pistols that listed "Clarence Weeks" as the purchase; a lock box containing a birth certificate for "Clarence Marcel Weeks" and $1,300 in cash; and a stack of temporary license plates from car dealers. After completing the search, the agents completed a consent form in Edmonds's presence and told her that it was to verify the verbal consent she had already given. Edmonds stated that she did not feel comfortable signing the form, and the agent wrote "refused to sign—gave verbal consent" on the form. Edmonds initialed next to that notation.

The government later extradited Weeks to Massachusetts to be sentenced for his earlier convictions. Weeks was sentenced in federal court in Massachusetts under the Armed Career Criminal Act to 180 months of imprisonment. Weeks appealed his convictions and sentence to the First Circuit, and that court has since affirmed Weeks's earlier conviction and sentence. United States v. Weekes, 611 F.3d 68 (1st Cir. 2010).

After his sentencing hearing in Massachusetts, Weeks was returned to the Northern District of Georgia, where the government had filed charges based on the evidence seized when Weeks was arrested in Atlanta. A grand jury indicted Weeks on one count of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(e)(1); one count of being a fugitive in possession of a firearm, id.

5

§§ 922(g)(2), 924(a)(2); and two counts of making false statements and misrepresentations on a firearm application, id. §§ 924(a)(1)(A).

Weeks filed a preliminary motion to suppress evidence and argued that the search of the apartment violated his right to be free from unreasonable searches and seizures under the Fourth Amendment. The district court referred the motion to suppress to a magistrate judge, who held a hearing at which Weeks, Edmonds, and several of the agents testified about the circumstances surrounding Weeks's arrest and the search of the apartment. After the hearing, the government filed a response to Weeks's motion to suppress.

The magistrate judge issued a final report and recommendation and recommended that Weeks's motion to suppress be denied. The magistrate judge credited the testimony of the agents about the drawer of the nightstand being open, and about Edmonds's having consented to the search of the apartment. The magistrate judge discredited Weeks's and Edmonds's testimony that contradicted the testimony of the agents. The district court approved and adopted the report and recommendation of the magistrate judge and denied Weeks's motion to suppress evidence.

Weeks waived his right to a trial by jury and agreed to be tried by the district judge on stipulated facts. The government and Weeks jointly filed a

stipulation of facts. The government dismissed count two of the indictment, for being a fugitive in possession of a firearm, 18 U.S.C. §§ 922(g)(2), 924(a)(2), and the district court convicted Weeks of the three other counts.

A presentence investigation report classified Weeks as an armed career criminal based on four prior convictions under Massachusetts law. Weeks's guidelines range was 188 to 235 months. The district court sentenced Weeks to 235 months for the first count, with 115 months concurrent with, and 120 months consecutive to, his sentence from the convictions in Massachusetts. The district court sentenced Weeks to 60 months for each of the two other counts to run concurrently with his sentence from the district court in Massachusetts.

## II. STANDARDS OF REVIEW

Several standards of review govern this appeal. "We review the denial of a motion to suppress as a mixed question of law and fact; 'rulings of law [are] reviewed de novo and findings of fact [are] reviewed for clear error, in the light most favorable to [the government,] the prevailing party in district court.'" United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009) (alterations in original) (quoting United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007)). We review de novo whether a particular conviction is a violent felony or a serious drug offense for purposes of the Armed Career Criminal Act. United States v.

Robinson, 583 F.3d 1292, 1294 (11th Cir. 2009); United States v. Matthews, 466 F.3d 1271, 1273 (11th Cir. 2006). We review a sentence, "whether within or without the guidelines . . . only for reasonableness under an abuse of discretion standard." United States v. Irey, 612 F.3d 1160, 1186 (11th Cir. 2010) (en banc).

### III. DISCUSSION

Our discussion of this appeal is divided in two parts. First, we discuss Weeks's arguments that agents violated his right to be free from unreasonable searches and seizures under the Fourth Amendment when the agents searched the apartment and seized weapons and ammunition. Second, we discuss Weeks's arguments that his sentence is procedurally and substantively unreasonable.

*A. Weeks's Right Under the Fourth Amendment To Be Free From Unreasonable Searches and Seizures Was Not Violated.*

Weeks argues that the agents' initial entry into the apartment violated his Fourth Amendment right to be free from unreasonable searches and seizures, but "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603, 100 S. Ct. 1371, 1388 (1980). "Payton requires a two-part inquiry to determine if entry pursuant to an arrest warrant complies with

8

the Fourth Amendment's proscription of unreasonable searches." United States v. Bervaldi, 226 F.3d 1256, 1263 (11th Cir. 2000). "'[F]irst, there must be a reasonable belief that the location to be searched is the suspect's dwelling, and second, the police must have "reason to believe" that the suspect is within the dwelling.'" Id. (quoting United States v. Magluta, 44 F.3d 1530, 1533 (11th Cir. 1995)). Common sense guides our evaluation of both Payton factors. See id.

Weeks contends that the agents' entry into the apartment was unlawful because there was no reason to believe that Weeks was living at the apartment, but that contention is belied by the record. The agents had reason to believe that Weeks was residing at the apartment. Deputy Brock received a tip that Weeks was living in an apartment at the street address of the apartment complex; Deputy Brock searched utilities databases and received information that pointed him to a specific apartment; and Deputy Brock personally conducted surveillance at the apartment and observed Weeks entering and exiting a specific apartment on at least two occasions.

Weeks also contends that the agents' belief that he was in the apartment when it was entered was unreasonable, but that contention too has no support. We have held that "officers may presume that a person is at home at certain times of the day." Magluta, 44 F.3d at 1535. The agents reasonably believed that Weeks

was present at the apartment when they knocked on the door at 6:30 a.m., saw a person at the window, and the person refused to open the door after they announced their presence as law enforcement officers.

Weeks next argues that the plain view seizure of the ammunition was unconstitutional, but "[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 337, 110 S. Ct. 1093, 1099–1100 (1990). And "agents [are], of course, free to seize any evidence they discover[ed] in plain view within the proper scope of the protective sweep." United States v. Tobin, 923 F.2d 1506, 1513 (11th Cir. 1991). The magistrate judge did not credit exceedingly improbable testimony. Although Weeks and Edmonds testified that the drawer was not open and the ammunition was not in plain view when the agents entered the room, the magistrate judge was entitled to credit the testimony of the agents that the drawer was open when they entered. United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).

Weeks next argues that the search of the apartment after he was in custody was invalid, but "[o]ne of the well-established exceptions to the probable cause

and warrant requirements is a search which is conducted pursuant to voluntary consent." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). Edmonds consented to a search of the apartment after Weeks was in custody. Weeks relies on Edmonds's testimony that she never consented to the search, but the magistrate judge was entitled to find that Edmonds's testimony that she did not voluntarily consent was not credible and was "contradicted by the credible testimony of three law enforcement officers." Weeks also asserts that "Ms. Edmonds was not informed of her right not to agree to the search," but the Supreme Court "has rejected in specific terms the suggestion that police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." United States v. Drayton, 536 U.S. 194, 206, 122 S. Ct. 2105, 2113 (2002).

Weeks argues that Edmonds did not have authority to consent to a search of the apartment, but "[a] third party who has 'common authority over or other sufficient relationship to the premises or effects sought to be inspected' may give valid consent to search an area." United States v. Harris, 526 F.3d 1334, 1339 (11th Cir. 2008) (quoting United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993 (1974)). "Specifically, a third party's consent is valid if he has mutual use of the property, with joint access to or control of the area for most purposes."

11

Id. Edmonds had mutual use of the property: she treated the apartment as her own home, cleaning, cooking, and spending her time during the day taking care of her children in the apartment; she shared the master bedroom of the apartment with Weeks; and she shared a set of keys to the apartment with Weeks. Even if Edmonds did not have actual authority to consent, she had at least apparent authority. See Illinois v. Rodriguez, 497 U.S. 177, 110 S. Ct. 2793 (1990).

Weeks next argues that Edmonds's consent was invalid because he was a present and objecting party under Georgia v. Randolph, 547 U.S. 103, 122–23, 126 S. Ct. 1515, 1528 (2006) ("[A] physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant."), but Weeks again fails to establish that the factual finding of the magistrate judge was clearly erroneous. The magistrate judge found that Weeks did not object, and also noted that Weeks was within earshot of the apartment when he was removed from the apartment to the breezeway. If the agents had wanted to prevent Weeks from objecting to the search they would have placed him further away. Weeks was not a present and objecting party under Randolph.

*B. Weeks's Sentence is Reasonable.*

We divide our discussion of Weeks's sentence in two parts. First, we discuss Weeks's arguments that his sentence is procedurally unreasonable because he does not qualify as an armed career criminal under the Armed Career Criminal Act. Second, we discuss Weeks's argument that his sentence is substantively unreasonable.

1. The District Court Correctly Classified Weeks as an Armed Career Criminal.

Weeks argues that the district court imposed a procedurally unreasonable sentence because it incorrectly classified him as an armed career criminal, but the district court correctly determined that Weeks had three qualifying convictions. The Act requires that a defendant convicted of unlawful possession of a firearm, 18 U.S.C. § 922(g), be sentenced to no less than 15 years of imprisonment if the defendant has three previous convictions for violent felonies or serious drug offenses, id. § 924(e)(1). The district court classified Weeks as an armed career criminal on the basis of four convictions under Massachusetts law: an assault and battery conviction from 1999; a conviction for distributing cocaine in 2000; a conviction for possession with intent to distribute cocaine in 2001; and a conviction for resisting arrest and disorderly conduct in 2003.

"Generally, in determining whether a prior conviction is a qualifying offense for enhancement purposes, we apply a 'categorical' approach—that is, we

13

look no further than the fact of conviction and the statutory definition of the prior offense." United States v. Llanos–Agostadero, 486 F.3d 1194, 1196–97 (11th Cir. 2007). "The circumstances under which a court may depart from this 'categorical approach' are very limited . . . . A court may look behind the judgment of conviction when it is impossible to determine from the face of the judgment or statute whether the prior crime satisfies the enhancement statute." United States v. Breitweiser, 357 F.3d 1249, 1254–55 (11th Cir. 2004).

Weeks argues that his prior drug convictions do not qualify categorically as serious drug offenses under the Act, but that argument fails. Weeks's two drug convictions were for violations of Massachusetts controlled substance law, Mass. Gen. Laws ch. 94C, § 32A(a), which provides a maximum penalty of ten years of imprisonment:

> Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute or dispense a controlled substance in Class B of section thirty-one shall be punished by imprisonment in the state prison for not more than ten years, or in a jail or house of correction for not more than two and one-half years, or by a fine of not less than one thousand nor more than ten thousand dollars, or both such fine and imprisonment.

Id. Under the Armed Career Criminal Act, the definition of a "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled

14

substance . . . , for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The statutory definition of Weeks's prior drug convictions categorically meets the definition of a serious drug offense under the Act.

Weeks argues that section 32A(a) "provides for two separate offenses: (1) one punishable by imprisonment for not more than 2 ½ years in the Massachussetts House of Corrections . . . or a jail; and (2) another which is punishable by up to 10 years in state prison," but that argument contradicts the plain text of the statute. Weeks contends that because he was sentenced by a state district court, which does not have the authority to sentence a defendant to state prison, he was not convicted of an offense that provided a maximum sentence of ten years of imprisonment. The problem with Weeks's argument is that section 32A(a) does not create two offenses, but only one offense that is punishable in a number of ways. See Mass. Gen. Laws ch. 94C, § 32A(a).

Weeks argues that his conviction for resisting arrest under Massachusetts law, Mass. Gen. Laws Ann. Ch. 268, § 32B, does not qualify as a violent felony under the Act, 18 U.S.C. § 922(e), but section 32B categorically meets the definition of a violent felony under the Act. Section 32B provides that a person

can resist arrest in one of two ways, both of which are punishable by up to two and one-half years of imprisonment:

> (a) A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:
> (1) using or threatening to use physical force or violence against the police officer or another; or
> (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another.
> . . . .
> (d) Whoever violates this section shall be punished by imprisonment in a jail or house of correction for not more than two and one-half years . . . .

Mass. Gen. Laws Ann. Ch. 268, § 32B(a), (d).

The Act provides two categories of crimes that qualify as violent felonies:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that--
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

18 U.S.C. § 924(e)(2)(B). Weeks concedes that the first method of resisting arrest under the Massachusetts statute fits the definition of a violent felony under the Act; the conduct prohibited obviously "has as an element the use, attempted use, or threatened use of physical force against the person of another." Id.

16

Weeks argues that the second method of resisting arrest does not qualify categorically as a crime of violence, but resisting arrest by "using any other means which creates a substantial risk of causing bodily injury to such police officer or another," § 32B(a)(2), "involves conduct that presents a serious potential risk of physical injury to another," § 924(e)(2)(B)(ii). See United States v. Almenas, 553 F.3d 27, 33 (1st Cir. 2009). Weeks argues that "[u]nder Massachusetts law, the offense of resisting arrest may be committed violently or non-violently," but we agree with the First Circuit that resisting arrest under Massachusetts law always involves violence. "Because the police officer is duty-bound to effectuate the arrest, the offense engenders a significant risk of conflict and, concomitantly, a significant risk of injury." Almenas, 553 F.3d at 34; see also Weekes, 611 F.3d at 73. Weeks has failed to establish that resisting arrest by "using any other means which creates a substantial risk of causing bodily injury to such police officer or another," § 32B(a)(2), can be committed without "present[ing] a serious potential risk of physical injury to another," § 924(e)(2)(B).

Weeks also contends that the district court erred when it relied on his prior conviction for assault and battery under Massachusetts law, Mass. Gen. Laws ch. 265, § 13A, as a predicate violent felony under the Act, but we decline to decide that issue. Because we have already determined that Weeks has two prior

17

convictions for serious drug offenses and one prior conviction for a violent felony, Weeks qualifies as a career offender under the Act.

2. Weeks's Sentence is Substantively Reasonable.

Weeks argues that his sentence is substantively unreasonable, but the district court did not abuse its discretion. We will reverse a sentence as substantively unreasonable only "if we are 'left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" United States v. McBride, 511 F.3d 1293, 1297–98 (11th Cir. 2007) (quoting United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006)). "[W]hen the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

Weeks's within-guidelines-range sentence is reasonable. Weeks's guidelines range for his convictions was 188 to 235 months with a 180-month mandatory minimum sentence for the first count for being a felon in possession of a firearm. The district court sentenced Weeks to 235 months on the first count, with 115 months concurrent with, and 120 months consecutive to, his sentence from the conviction in Massachusetts. The district court sentenced Weeks to 60

18

months on each of the two other counts to run concurrently with his Massachusetts sentence. Weeks received in total a consecutive sentence of only 120 months; the district court allowed the remainder of his sentence to run concurrently with his sentence from Massachusetts.

Weeks argues that the district court imposed an unreasonable sentence because it should have imposed his sentence entirely concurrent to his sentence for his earlier conviction in Massachusetts, but we reject that argument. Weeks argues that his conviction in Massachusetts and his conviction in the district court "are all part of an extended course of conduct, ultimately resulting in his sentence of 180 months in the District of Massachusetts," but if the district court had imposed a sentence that was to run entirely concurrent to his sentence for a separate offense, it would have effectively given Weeks a free pass for his crime spree as a fugitive from justice. The district court considered all the sentencing factors and reasonably concluded that Weeks's sentence should not run entirely concurrent to his sentence from the district court in Massachusetts.

## IV. CONCLUSION

Weeks's convictions and sentence are **AFFIRMED**.