# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 18, 2019

Lyle W. Cayce
Clerk

No. 17-60538

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

GLEN B. CLAY, also known as Glenn B. Clay,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before JONES, HO, and OLDHAM, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The district court denied Petitioner's successive § 2255 habeas petition because he failed to establish that the sentencing court relied on the residual clause to impose his ACCA-enhanced sentence. Because this court concludes that a prisoner bringing a successive § 2255 petition must show that it is "more likely than not" that the sentencing court relied on the residual clause to prove that his claim "relies on" *Johnson*, the district court's judgment is AFFIRMED.

## BACKGROUND

Following a jury trial in 2008, Petitioner Glen B. Clay, federal prisoner #09299-043, was convicted of violating 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. That conviction ordinarily carries a maximum sentence of ten years. *See* 18 U.S.C. § 924(a)(2). However, both the

No. 17-60538

superseding indictment and the presentence report ("PSR") indicated that Clay was punishable under the Armed Career Criminal Act ("ACCA"), which imposes a 15-year minimum sentence on defendants who have at least three prior convictions for "violent felonies" or for "serious drug offenses" when the underlying crimes were committed on different occasions. *See* 18 U.S.C. § 924(e). During sentencing, Clay's counsel conceded that the ACCA applied. Thereafter, the sentencing court adopted the PSR's recommendations and applied the ACCA sentencing enhancement, sentencing Clay to 235 months' imprisonment.

Clay timely appealed both his conviction and sentence, but he did not challenge the ACCA sentencing enhancement on direct appeal or in his initial habeas petition. Clay's acceptance of the ACCA's applicability evaporated, however, after the Supreme Court issued its decision in *Johnson v. United States* and held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." 135 S. Ct. 2551, 2563 (2015). Claiming that the sentencing court relied on the residual clause to impose his ACCA-enhanced sentence, Clay sought permission to file a successive § 2255 habeas petition in light of *Johnson*. This court granted him permission in 2016, reasoning that because "[t]he record before us contains no documentation of Clay's predicate offenses," there is a "possibility that he was sentenced under the residual clause." In so doing, this court cautioned that its "grant of authorization [was] tentative in that the district court must dismiss the § 2255 motion without reaching the merits if it determines that Clay has failed to make the showing required to file such a motion."

Clay filed his successive § 2255 habeas petition in district court. At bottom, Clay alleged that the sentencing court "only relied on the now invalid 'residual clause' to establish that [his] prior state court convictions supported

2

an enhanced sentence" under the ACCA. Clay's petition acknowledged that the record did not include any documents relating to his underlying state-court convictions which proved that the sentencing court relied on the residual clause. Accordingly, Clay asked the district court to obtain "appropriate adjudicative records" during the process of evaluating his petition to determine "whether any of Clay's convictions qualify as violent felonies under the ACCA." *Id.*

The district court denied Clay's successive petition without obtaining the requisite documents. First, the district court held that it lacked jurisdiction over Clay's successive petition because Clay "has not demonstrated that the court relied on the residual clause in sentencing him" and therefore "has not shown that his case falls within the rule announced in *Johnson*." Second, in the alternative, the district court held that Clay "failed to show that he is entitled to relief on the merits" because his prior convictions qualify as "violent felonies" under the enumerated offenses clause of the ACCA, which means that any error from the sentencing court's reliance on the residual clause is harmless. In its order denying Clay's successive petition, the district court also denied a certificate of appealability ("COA"). Clay then sought a COA before this court.

This court granted Clay a COA to challenge the district court's denial of his successive § 2255 petition. The COA was granted on two issues, which parallel the district court's alternate holdings: (1) "whether a prisoner seeking the district court's authorization to file a successive § 2255 motion raising a *Johnson* claim must establish that he was sentenced under the residual clause to show that the claim relies on *Johnson*"; and (2) "whether any *Johnson* error at sentencing was harmless because Clay's 1982 house burglaries constituted enumerated burglary under the ACCA."

No. 17-60538

## STANDARD OF REVIEW

"In challenges to district court decisions under 28 U.S.C. § 2255, we measure findings of fact against the clearly erroneous standard and questions of law *de novo*." *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994). "If the district court lacked jurisdiction, our jurisdiction extends not to the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000) (per curiam) (internal quotation marks, citation, and alteration omitted).

## DISCUSSION

Under 28 U.S.C. §§ 2244(b) and 2255(h), "[a] second or successive habeas application must meet strict procedural requirements before a district court can properly reach the merits of the application." *United States v. Wiese*, 896 F.3d 720, 723 (5th Cir. 2018). "There are two requirements, or 'gates,' which a prisoner making a second or successive habeas motion must pass to have it heard on the merits." *Id.* (internal citation omitted). First, the prisoner must make a "prima facie showing" to the circuit court "that the motion relies on a new claim resulting from either (1) 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable,' or (2) newly discovered, clear and convincing evidence that but for the error no reasonable fact finder would have found the defendant guilty." *Id.* (quoting 28 U.S.C. §§ 2244(b), 2255(h)). Second, after receiving permission from the circuit court to file a successive petition, "the prisoner must actually prove at the district court level that the relief he seeks relies either on a new, retroactive rule of constitutional law or on new evidence." *Id.* (citing 28 U.S.C. § 2244(b)). Where a prisoner fails to make the requisite showing before the district court, the district court lacks jurisdiction and must dismiss his successive petition without reaching the merits. *Id.*

No. 17-60538

At issue here is the degree to which a prisoner "must actually prove" that the relief he seeks "relies on" *Johnson* to confer jurisdiction on a district court. *Id.* The circuits are split on this issue. To prove that a successive petition relies on *Johnson* in the First, Third, Sixth, Eighth, Tenth, and Eleventh Circuits, a prisoner must show that it is "more likely than not" that the sentencing court invoked the residual clause. *See, e.g., Dimott v. United States,* 881 F.3d 232, 243 (1st Cir. 2018) ("[T]o successfully advance a [*Johnson*] claim on collateral review, a habeas petitioner bears the burden of establishing that it is more likely than not that he was sentenced solely pursuant to ACCA's residual clause."); *see also Potter v. United States,* 887 F.3d 785, 788 (6th Cir. 2018); *Walker v. United States,* 900 F.3d 1012, 1015 (8th Cir. 2018); *United States v. Washington,* 890 F.3d 891, 896 (10th Cir. 2018); *Beeman v. United States,* 871 F.3d 1215, 1221–22 (11th Cir. 2017); *United States v. Peppers,* 899 F.3d 211, 235 n. 21 (3d Cir. 2018). In contrast, to prove that a successive petition relies on *Johnson* in the Fourth and Ninth Circuits, a prisoner need only show that the sentencing court "may have" invoked the residual clause. *See United States v. Winston,* 850 F.3d 677, 682 (4th Cir. 2017); *United States v. Geozos,* 870 F.3d 890, 896 (9th Cir. 2017).

Although this court has previously observed in passing that "the 'more likely than not' standard appears to be the more appropriate standard," we have yet to "conclusively decide" which standard of proof applies. *Wiese,* 896 F.3d at 724–25 (noting that the successive petition failed under either standard); *see also United States v. Taylor,* 873 F.3d 476, 479–81 (5th Cir. 2017) (describing the circuit split before concluding that "[w]e need not decide today which, if any, of these standards we will adopt because we conclude that Taylor's § 2255 claim merits relief under all of them"). For reasons described below, resolving Clay's appeal will require this court to select a standard of proof. However, before resolving that issue, a little background is in order.

No. 17-60538

To receive a sentencing enhancement under the ACCA, a defendant must have previously been convicted of at least three "violent felonies" that occurred on different occasions from one another.[1]  18 U.S.C. § 924(e)(1).  At the time Clay was sentenced for violating 18 U.S.C. § 922(g)(1), the ACCA defined "violent felony" as a "crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" ("the force clause"); (2) "is burglary, arson, or extortion, [or] involves [the] use of explosives" ("the enumerated offenses clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" ("the residual clause"). *Id.* § 924(e)(2)(B).  In *Johnson*, the Supreme Court held that the residual clause was unconstitutionally vague, such that an ACCA-enhanced sentence could not be constitutionally imposed in reliance on that clause's definition of a "violent felony." 135 S. Ct. at 2557.  In *Welch v. United States*, the Court held *Johnson* retroactively applicable to cases on collateral review, thus enabling the basis for Clay's successive petition.  136 S. Ct. 1257, 1265 (2016).

In this case, both the superseding indictment and PSR indicate that—at the time of his sentencing—Clay had nine prior Mississippi convictions for which he was sentenced to "imprisonment for a term exceeding one year": two for business burglary, two for armed robbery, one for aggravated assault, and four for house burglary.  Although both documents report that Clay was eligible for an ACCA sentencing enhancement, neither document identifies which of Clay's prior convictions were used to make that determination or which definitional clauses of the ACCA were used to define those convictions as "violent felonies."  Moreover, because Clay's counsel conceded at his hearing

---

[1] No parties contest that Clay qualified for an ACCA sentencing enhancement based on the commission of a "serious drug offense," so that predicate is not analyzed here.

6

that the ACCA applied, there was no occasion for the sentencing court to clarify how the requisite "violent felonies" were tabulated.

For the sentencing court to have lawfully imposed the ACCA sentencing enhancement, it would have needed to determine that at least three of Clay's prior convictions were for "violent felonies" under the ACCA. *See* 18 U.S.C. § 924(e)(1). Because Clay's armed robbery and aggravated assault convictions stemmed from the same incident, they would have counted together as only one ACCA-qualifying offense. Therefore, the sentencing court must have determined that at least two of Clay's six burglary convictions were "violent felonies." Neither the district court nor the parties allege that Clay's convictions for "business burglary" were "violent felonies." The question reduces to whether at least two of Clay's convictions for "house burglary" were correctly considered "violent felonies."

Clay argues that the only way the sentencing court could have counted his "house burglary" convictions as "violent felonies" is for the sentencing court to have relied on the now-unconstitutional residual clause. Alternatively, he claims that "[w]here no record exists explaining whether [a] petitioner's convictions fit the elements clause, the enumerated offenses clause, or the residual clause," this court should apply the rule of lenity and give him the benefit of the doubt. (internal quotation marks and citation omitted). The government responds that convictions for "house burglary" qualified expressly as "violent felonies" under ACCA's enumerated offenses clause. *See* 18 U.S.C. § 924(e)(2)(B)(ii). Consequently, even if the sentencing court relied on the residual clause, any error is harmless.

"[T]o determine whether a sentence was imposed under the enumerated offenses clause or the residual clause," this court "look[s] to the law at the time of sentencing." *Wiese*, 896 F.3d at 724. In 2008, when Clay's ACCA-enhanced sentence was imposed, the sentencing court would have used the categorical

approach to determine whether his prior "house burglary" convictions qualified as "violent felonies" under the enumerated offenses clause. Burglary is an enumerated offense in 18 U.S.C. § 924(e)(2)(B)(ii), but not all offenses labeled "burglary" constitute the enumerated, generic offense of burglary listed in the ACCA. *See Taylor v. United States*, 495 U.S. 575, 580, 598–99, 110 S. Ct. 2143, 2149, 2158 (1990). Under the categorical approach, to determine whether Clay's "house burglary" convictions were convictions for "generic burglary," the sentencing court would have compared the elements of the statute of conviction—here, the Mississippi statute criminalizing "house burglary" in 1982—with the elements of "generic burglary." *Id*. at 599–600, 110 S. Ct. at 2158–59. For purposes of the ACCA, "generic burglary" is defined by "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id*. at 599, 110 S. Ct. at 2158. When comparing the elements, "[i]f the state statute [of conviction] is narrower than the generic view . . . the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary" and the conviction therefore qualifies as an enumerated "violent felony." *Id*. However, if the state statute of conviction "define[s] burglary more broadly, *e.g*., by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings," the conviction generally will not qualify. *Id*. at 599–602, 110 S. Ct. at 2158–60.

In this case, the district court found (and the government argues on appeal) that Clay's "house burglary" convictions were for violating Mississippi Code Annotated § 97-17-19 (1972), which criminalized "breaking and entering any dwelling house, in the day or night, with intent to commit a crime." S*ee Course v. State*, 469 So. 2d 80, 80–81 (Miss. 1985) (applying Mississippi Code Annotated (1972) to a burglary committed in October 1982). Because that statute includes "the basic elements of unlawful or unprivileged entry into, or

remaining in, a building or structure, with intent to commit a crime," the district court concluded under the categorical approach that Clay's convictions for "house burglary" were enumerated "violent felonies" under the ACCA. *Taylor*, 495 U.S. at 599, 110 S. Ct. at 2158. Therefore, the district court reasoned, "even if the [sentencing] court relied on the residual clause . . . Clay's sentence was properly enhanced under the ACCA and thus, he has suffered no prejudice from any *Johnson* error." On these grounds, the district court denied Clay's successive § 2255 petition.

Clay disputes this result on three bases. His first two arguments challenge the district court's analysis under the categorical approach, insisting (for various reasons) that § 97-17-19 does not comport with "generic burglary" under the ACCA. This court finds those arguments unavailing.[2] Clay's third argument, however, is more compelling and requires this court to resolve the first issue identified in the COA—namely, the degree to which a prisoner must

---

[2] First, citing to a federal district court opinion, Clay claims that this court must apply "current law on the enumerated offense clause" to determine if a *Johnson* error is harmless. (citing *United States v. Scott*, No. CV 99-05-JJB-EWD, 2017 WL 3446030, at *2 (M.D. La. Aug. 10, 2017), *superseded on other grounds*, 2018 WL 2169965 (M.D. La. May 10, 2018) (emphasis omitted)). Clay appears to argue that, because this court held in 2017 that the current Mississippi burglary statute is broader than "generic burglary," his convictions under a now-superseded burglary statute cannot be enumerated felonies under the ACCA. (citing *United States v. Johnson*, 477 F. App'x 182, 183 (5th Cir. 2012) (per curiam) ("There is no dispute that [Mississippi Code Annotated § 97-17-33 (1992)] criminalizes conduct not covered by a generic burglary offense."));

The problem with this first argument is that, contra Clay's assertion, this court does not rely on current statutory elements when deciding whether a defendant's prior conviction constitutes a "violent felony." Rather, this court examines the statutory elements as they existed at the time the defendant committed the offense. As a result, it is irrelevant that this court—in a 2017 unpublished opinion—held that the 1992-version of Mississippi's burglary statute is broader than the generic definition. What matters is whether the version of the statute in effect at the time of Clay's house burglaries in 1982 matches the generic definition.

Turning to the statutes in effect at the time of his conviction, Clay next contends that the "meaning of a dwelling-house" is broader than the "building or structure" contemplated in *Taylor*. Clay did not raise this issue until his reply brief. Thus, it is waived. *See United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) (per curiam) ("Arguments raised for the first time in a reply brief, even by pro se litigants . . . are waived.").

prove that he was sentenced under the residual clause before he is entitled to bring a successive § 2255 petition raising a *Johnson* claim.

In his third argument, Clay contends that it is impossible for this court to determine whether his prior convictions were for enumerated felonies under the categorical approach because, at the time of his convictions, the Mississippi Code Annotated had multiple statutes criminalizing the burglary of a house and neither the superseding indictment, PSR, nor sentencing court indicated which of those statutes he was convicted of violating. Consequently, although Mississippi Code Annotated § 97-17-19 (1972) may comport with the definition of "generic burglary," it is not clear that Clay was convicted of violating § 97-17-19. Instead, his "house burglary" convictions could have been for violating Mississippi Code Annotated § 97-17-21 (1972) ("Burglary: Inhabited Dwelling"); § 97-17-23 (1972) ("Burglary: Inhabited Dwelling—Breaking in at Night While Armed With Deadly Weapon"); § 97-17-25 (1972) ("Burglary: Breaking Out of Dwelling"); § 97-17-27 (1972) ("Burglary: Breaking Inner Door of Dwelling at Night"); or § 97-17-29 (1972) ("Burglary: Breaking Inner Door of Dwelling by One Lawfully in House"). Not all of these statutes comport with the definition of "generic burglary" in the enumerated offenses clause. *See* § 97-17-25 (criminalizing unlawful exit of a dwelling house after committing a crime therein, with no mention of "unlawful or unprivileged entry into, or remaining in" that house "with intent to commit a crime").

Without conviction records, this court cannot conclusively determine which statute(s) Clay was convicted of violating—and, accordingly, whether his prior convictions for "house burglary" qualified as "violent felonies" under the ACCA's enumerated offenses clause. Therefore, this court cannot rule out the possibility that the sentencing court relied solely on the residual clause to impose Clay's ACCA-enhanced sentence. In the face of this ambiguity, Clay asks this court to reverse the district court and vacate his enhanced sentence.

In making this argument, Clay returns this court to our prior discussion of the appropriate standard of proof.  On the record before this court, Clay has shown that the sentencing court "may have" relied on the residual clause to enhance his sentence.  Therefore, if this court adopts the standard articulated by the Third, Fourth, and Ninth Circuits, Clay will have sustained his burden of proof and the district court will have had jurisdiction over his successive § 2255 petition.  However, Clay has not shown that the sentencing court "more likely than not" relied on the residual clause.  Mississippi Code Annotated § 97-17-19 (1972) appears to have been the primary statute criminalizing "house burglary" in 1982—as indicated in part by its title: "Burglary: Breaking and Entering Dwelling"—which makes it just as likely that the district court correctly identified § 97-17-19 as the statute of conviction as that it incorrectly identified it.  Moreover, the PSR's descriptions of Clay's "house burglary" convictions suggest that § 97-17-19 was the likely statute of conviction, and Clay has pointed to nothing in the record indicating otherwise.  *See Wiese*, 896 F.3d at 725 (declaring that this court may look to the PSR "[i]n determining potential reliance on the residual clause by the sentencing court").  Therefore, if this court adopts the standard articulated by the First, Sixth, Eighth, Tenth, and Eleventh Circuits, Clay will have failed to prove that his successive § 2255 petition relies on *Johnson* and the district court will have lacked jurisdiction.  *Cf. Beeman*, 871 F.3d at 1224–25 (explaining that if "it is unclear from the record whether the sentencing court had relied on the residual clause," the prisoner—who bears the burden of proof—"loses") (internal quotation marks and citations omitted).

No. 17-60538

Faced with a situation where the standard of proof makes a difference to the outcome,[3] this court sides with the majority of circuits and holds that a prisoner seeking the district court's authorization to file a successive § 2255 petition raising a *Johnson* claim must show that it was more likely than not that he was sentenced under the residual clause. This standard best "comports with the general civil standard for review and with the stringent and limited approach of [the Antiterrorism and Effective Death Penalty Act] to successive habeas applications." *Wiese*, 896 F.3d at 724; *cf. Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) ("In a section 2255 motion, a petitioner has the burden of sustaining his contentions by a preponderance of the evidence.").

Applying that standard to the facts in this case, Clay has failed to show by a preponderance of the evidence that he was sentenced under the residual clause and, thus, that his claim relies on *Johnson*. As a result, the district court lacked jurisdiction over his successive § 2255 petition. Moreover, because the district court lacked jurisdiction, there is no occasion for this court to address the district court's alternate holding on the merits or the second issue identified in the COA. *See Key*, 205 F.3d at 774.

## CONCLUSION

For the foregoing reasons, the district court's order dismissing Clay's successive § 2255 petition for lack of jurisdiction is **AFFIRMED**.

---

[3] The ambiguity in the record distinguishes this case from *Wiese* and *Taylor*, where this court was able to resolve the appeal without deciding on a standard of proof. *See Wiese*, 896 F.3d at 725 (holding that the defendant failed to show that his claim relied on *Johnson* under either standard); *Taylor*, 873 F.3d at 482 (holding that the defendant successfully showed that his claim relied on *Johnson* under both standards).