[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10049
_____

D. C. Docket Nos. 1:16-cv-02092-TWT,
1:08-cr-00393-TWT-RGV-1

JEROME JULIUS WEEKS,
a.k.a. Clarence Royden Weekes, etc.,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 22, 2019)

Before TJOFLAT, JORDAN, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This appeal presents a unique factual and legal situation.  As set forth below, it involves a successive motion under 28 U.S.C. § 2255, with respect to which we granted Mr. Jerome Weeks leave to file. We concluded he had made a prima facie showing that his prior convictions for resisting arrest and assault and battery—which had served as predicates for the enhancement of his federal sentence under the Armed Career Criminal Act (the "ACCA")—no longer qualified as violent felonies under the ACCA in light of the ruling of the Supreme Court in Samuel Johnson v. United States[1] that the ACCA's residual clause is unconstitutionally vague.  Section 2255 movants raising Samuel Johnson claims "must show that—more likely than not—it was use of the residual clause that led to the sentencing court's enhancement of [their] sentence."  Beeman v. United States, 871 F.3d 1215, 1222 (11th Cir. 2017), cert. denied, 139 S. Ct. 1168 (2019).  The necessary showing, according to Beeman, is that the residual clause was the sole basis for the enhancement.  Id.

This appeal is unique because, after sentencing but during the pendency of Mr. Weeks's direct appeal, there were significant developments relevant to the issue of whether the residual clause was the sole basis for his ACCA enhancement.

---

[1] Samuel Johnson v. United States, ___ U.S. ___, ___, 135 S. Ct. 2551, 2563 (2015) (holding the ACCA's residual clause to be unconstitutionally vague).

Thus, we must decide, when a claimant challenged his ACCA enhancement on direct appeal, whether the relevant time frame for this inquiry is limited to the sentencing hearing or if it extends through the claimant's direct appeal. We hold that, where a claimant challenged his ACCA enhancement on direct appeal, the relevant time frame to consider when determining whether the residual clause solely caused the enhancement of a claimant's sentence extends through direct appeal. Because Mr. Weeks has carried his burden of showing that it is more likely than not that the residual clause, and only the residual clause, caused his sentence to be enhanced and that he no longer has three ACCA predicate convictions, we reverse the district court's order denying his § 2255 motion and remand for resentencing.

## I.  BACKGROUND

### A.  Conviction and Sentencing

After a stipulated bench trial, Mr. Weeks was found guilty of one count of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1), (e)(1) and two counts of making false statements in the course of purchasing firearms in violation of 18 U.S.C. § 922(g)(2) and § 924(a)(2). The ACCA provides for a fifteen-year mandatory minimum sentence for violations of § 922(g) by a defendant who has three or more prior convictions for a "violent felony" or "serious drug offense." Id. § 924(e)(1). Prior to Mr. Weeks's sentencing hearing,

3

United States Probation prepared a presentence investigation report ("PSR") recommending that, because he had convictions for two prior violent felonies and two serious drug offenses, he qualified for an ACCA-enhanced sentence. Relevant for purposes of this appeal, the ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

(i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). "Subsection (i) is called the 'elements clause.' The first part of subsection (ii) is known as the 'enumerated offenses clause,' and the second is the 'residual clause.'" United States v. Pickett, 916 F.3d 960, 962 (11th Cir. 2019).[2]

Probation relied on four of Mr. Weeks's prior convictions from Massachusetts in recommending that he qualified for an ACCA-enhanced sentence: (1) assault and battery, (2) resisting arrest, (3) distributing cocaine, and (4) possession with intent to distribute cocaine.[3] Mr. Weeks objected to this

---

[2] Because it is obvious that Mr. Weeks's prior convictions at issue in this case (resisting arrest and assault and battery) do not qualify under the enumerated offenses clause, we discuss only the elements clause and residual clause.

[3] In this Court's order granting Mr. Weeks permission to file a second or successive § 2255 motion, we made clear that Mr. Weeks's two prior drug convictions qualify as "serious drug offenses" under 18 U.S.C. § 924(e)(2)(A), are unaffected by Samuel Johnson, and are thus

4

recommended sentencing enhancement, contending that these prior convictions did not qualify as violent felonies. The Government agreed with Probation's recommendation. As to Mr. Weeks's prior assault and battery conviction, the PSR stated that "[t]he criminal complaint in this instance alleged that the defendant assaulted and beat the victim."[4] The Government did not introduce any Shepard[5] documents and the relevant portions of the PSR did not contain any further information derived from Shepard documents.

### 1. Resisting Arrest Prior Conviction at Sentencing

At the sentencing hearing, the district court heard arguments from the parties as to whether these prior convictions qualified as violent felonies under the ACCA. At the time of Mr. Weeks's resisting arrest offense, Massachusetts law provided:

(a)    A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under

---

not at issue in the instant appeal. See In re Weeks, No. 16-12406 (11th Cir. June 7, 2016). The procedural history of this case as it relates to these two prior convictions is accordingly not discussed in further detail.

[4] Mr. Weeks objected to the factual statements contained in this portion of the PSR "to the extent derived from police reports or sources of information not sanctioned under" Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005). Because the "assaulted and beat" language in the PSR came from a charging document sanctioned by Shepard, it was therefore not objected to and the sentencing court was permitted to rely upon this statement as undisputed. See In re Hires, 825 F.3d 1297, 1302 (11th Cir. 2016) ("In determining the nature of a defendant's prior convictions and whether to classify the defendant as an armed career criminal under the ACCA, the sentencing court may rely on Shepard-approved documents and any undisputed facts in the presentence investigation report.").

[5] Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005).

> color of his official authority, from effecting an arrest of the actor or another, by:
>
> (1)    using or threatening to use physical force or violence against the police officer or another; or
>
> (2)    using any other means which creates a substantial risk of causing bodily injury to such police officer or another.

Mass. Gen. Laws ch. 268, § 32B(a).  In his sentencing memorandum and at the sentencing hearing, Mr. Weeks argued that while § 32B(a)(1) qualified as a violent felony, § 32B(a)(2) did not.  The Government argued that both subsections qualified, pointing to First Circuit case law, United States v. Almenas, which held that Massachusetts resisting arrest qualified as a crime of violence under U.S.S.G. § 4B1.2 because the first method of violating the statute "fits squarely" within the elements clause while the second method "falls safely within the residual clause." 553 F.3d 29, 32–36 (1st Cir. 2009).

*2. Assault and Battery Prior Conviction at Sentencing*

At the time of Mr. Weeks's assault and battery offense, Massachusetts law provided:

> Whoever commits an assault or an assault and battery upon another shall be punished by imprisonment for not more than two and one half years in a house of correction or by a fine of not more than five hundred dollars.

Mass. Gen. Laws ch. 265, § 13A (amended 2002).  The offense is not defined by statute but instead finds its definitions in Massachusetts common law.  See

6

Commonwealth v. Burke, 390 Mass. 480, 481–82, 457 N.E.2d 622, 623–24 (1983).  Assault and battery under § 13A encompasses three common-law crimes: harmful battery, reckless battery, and offensive battery.  See Commonwealth v. Eberhart, 461 Mass. 809, 818, 965 N.E.2d 791, 798 (2012); Burke, 390 Mass. at 482, 457 N.E.2d at 624; Commonwealth v. Boyd, 73 Mass. App. Ct. 190, 194–95, 897 N.E.2d 71, 76 (2008).  Harmful battery is "[a]ny touching 'with such violence that bodily harm is likely to result.'"  See Burke, 390 Mass. at 482, 457 N.E.2d at 624.  Reckless battery is a "wilful, wanton and reckless act which results in personal injury to another."  See Commonwealth v. Welch, 16 Mass. App. Ct. 271, 274, 450 N.E.2d 1100, 1102 (1983).  Finally, offensive battery is when "the defendant, without justification or excuse, intentionally touche[s] the victim, and that . . . touching, however slight, occur[s] without the victim's consent."  See Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 476, 892 N.E.2d 805, 814 (2008); accord Eberhart, 461 Mass. at 818, 965 N.E.2d at 798.

In his sentencing memorandum and at the sentencing hearing, Mr. Weeks argued that the charging language used in the criminal complaint for his prior assault and battery conviction—"defendant assaulted and beat the victim"—was boilerplate language used in charging assault and battery offenses regardless of the

7

type of battery that occurred.[6]  He contended that his charging document could not support an inference that he committed a violent felony because it encompassed offensive battery, which is nonviolent.  Mr. Weeks also pointed to the certiorari petition that had been granted from the Eleventh Circuit's decision in Curtis Johnson, which was poised to answer whether nonharmful touching could qualify as a violent felony under the ACCA.  See United States v. Curtis Johnson, 528 F.3d 1318 (11th Cir. 2008), cert. granted, 129 S. Ct. 1315 (2009).

The Government argued in its sentencing memorandum and at the sentencing hearing that the "assaulted and beat" charging language indicated that Mr. Weeks was convicted of harmful battery, as previously held by the First Circuit.  See United States v. Rivera, 562 F.3d 1, 1 (1st Cir. 2009) ("[T]he 'did assault and beat' charging language suffices to identify the 'harmful' brand of assault and battery, qualifying the offense as a violent felony under the ACCA."), abrogated by United States v. Holloway, 630 F.3d 252 (1st Cir. 2011).

In announcing its Sentencing Guideline calculations, the sentencing court stated:

> I'm going to overrule the Defendant's objection to paragraph 45 of the Pre-Sentence Report.  I think that the Defendant does qualify for the armed career criminal enhancement based on the two drug charges for

---

[6] To support this argument, Mr. Weeks pointed to Mass. Gen. Laws ch. 277, § 79, which outlines the proper form for criminal indictments and complaints for various offenses.  In Massachusetts, a charging document for assault and battery is sufficient if it alleges "[t]hat A.B. did assault and beat C.D."  Id.  No differentiation between the three types of assault and battery is required or otherwise provided for in the statute.  See id.

distributing cocaine and possession with the intent to distribute cocaine and for the assault and battery charge and for the resisting arrest charge.  In the absence of extremely persuasive authority, I think that I should follow the [First] Circuit authority in this area which as I understand it would count all of those convictions for the armed career criminal enhancement.

## B.  Direct Appeal

On direct appeal, Mr. Weeks argued, among other things, that the district court erred in sentencing him as an armed career criminal.  See United States v. Weeks, 442 F. App'x 447, 454 (11th Cir. 2011).

### 1.  Resisting Arrest Prior Conviction on Direct Appeal

As to his resisting arrest conviction, Mr. Weeks reiterated the same arguments he made before the sentencing court.  He conceded that the first method of violating the statute, Mass. Gen. Laws ch. 268, § 32B(a)(1) ("using or threatening to use physical force or violence against the police officer or another"), qualified as a violent felony, but argued that the second method of violating the statute, § 32B(a)(2) ("using any other means which creates a substantial risk of causing bodily injury to such police officer or another"), did not qualify.  Weeks, 442 F. App'x at 455–56.  We rejected this argument in an unpublished opinion, concluding that Massachusetts's resisting arrest statute "involves conduct that presents a serious potential risk of physical injury to another."  Id. at 456 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).  We stated:

9

Weeks argues that "[u]nder Massachusetts law, the offense of resisting arrest may be committed violently or non-violently," but we agree with the First Circuit that resisting arrest under Massachusetts law always involves violence. "Because the police officer is duty-bound to effectuate the arrest, the offense engenders a significant risk of conflict and, concomitantly, a significant risk of injury." Almenas, 553 F.3d at 34; see also [United States v. Weekes, 611 F.3d 68, 73 (1st Cir. 2010).] Weeks has failed to establish that resisting arrest by "using any other means which creates a substantial risk of causing bodily injury to such police officer or another," § 32B(a)(2), can be committed without "present[ing] a serious potential risk of physical injury to another," § 924(e)(2)(B).

Id.

### 2.  *Assault and Battery Prior Conviction on Direct Appeal*

As to his assault and battery prior conviction, Mr. Weeks reiterated the same arguments he made before the sentencing court—that the "assaulted and beat" charging language was boilerplate, meaning that it did not permit ruling out nonviolent offensive battery, and consequently this conviction could not qualify as a violent felony under the elements clause. See Appellant's Br. at 47–48, United States v. Weeks, 442 F. App'x 447 (11th Cir. 2011) (No. 10-11087), ECF No. 28. Mr. Weeks cited to Curtis Johnson, id., which was decided a few days after his sentencing hearing, and which made clear that federal courts are bound by state court construction of state law, including the state law determination of the elements of a state offense, but held as a matter of federal law that an offense that could be committed in a nonconsensual but unharmful manner did not satisfy the ACCA's elements clause, Curtis Johnson v. United States ("Curtis Johnson"), 559

10

U.S. 133, 138, 145, 130 S. Ct. 1265, 1269–70, 1274 (2010). In a Rule 28(j) letter filed prior to oral argument in his direct appeal, Mr. Weeks also drew our attention to United States v. Holloway, 630 F.3d 252 (1st Cir. 2011), a new First Circuit decision issued after his sentencing, which expressly abrogated Rivera, 562 F.3d at 1, the case cited before—and presumably relied upon by—the sentencing court for the proposition that the assault and battery conviction qualified as a violent felony. See Supplemental Authority at 1, United States v. Weeks, 442 F. App'x 447 (11th Cir. 2011) (No. 10-11087), ECF No. 61. In United States v. Holloway, the First Circuit explained that its prior decision in United States v. Mangos, 134 F.3d 460 (1st Cir. 1998), had relied on its own reasonable construction of the "assault and beat" language of a Massachusetts assault and battery indictment to conclude that the indictment identified a harmful battery and thus a crime of violence for purposes of the federal sentence enhancement. Holloway, 630 F.3d at 257. Mangos gave birth to the rule that a Massachusetts "assault and beat" indictment alleged a violent felony for purposes of federal enhancement. The Mangos rule was followed in subsequent First Circuit cases, including the United States v. Rivera decision on which the sentencing court in Mr. Weeks's case relied. 562 F.3d 1, 1–2 (1st Cir. 2009). However, prompted by the then-recent holding of the Supreme Court in Curtis Johnson—that federal courts "must consider how the charging language is interpreted under state law rather than impose our own

11

construction," Holloway, 630 F.3d at 257—the Holloway court looked to Massachusetts state law and concluded that the state law made clear that the "assault and beat" charging language was boilerplate and not specific to harmful battery, id. at 260 (citing Mass. Gen. Laws ch. 277, § 79).  Because this charging language encompasses "a category of offenses which are no more than offensive touchings," id., the First Circuit determined that its prior "rule that the boilerplate charging language of assault and battery alone establishes a violent felony is no longer good law," id. at 254–55; see also id. at 260.  Accordingly, in the First Circuit after Holloway, "a court may only rely on an assault and battery conviction if it can ascertain [from sources other than the 'assault and beat' charging language] that the defendant was convicted of the violent form of the offense."  Id. at 262.

Because the direct appeal panel had previously concluded that Mr. Weeks had three ACCA predicate convictions, however, it declined to reach these arguments regarding his assault and battery conviction.  The panel stated:

> Weeks also contends that the district court erred when it relied on his prior conviction for assault and battery under Massachusetts law, Mass. Gen. Laws ch. 265, § 13A, as a predicate violent felony under the Act, but we decline to decide that issue.  Because we have already determined that Weeks has two prior convictions for serious drug offenses and one prior conviction for a violent felony, Weeks qualifies as a career offender under the Act.

Weeks, 442 F. App'x at 456.

12

C.  First Collateral Challenge

In his first § 2255 motion, Mr. Weeks, proceeding pro se, maintained that he was improperly sentenced as an armed career criminal.  The district court, adopting the magistrate judge's report and recommendation, dismissed Mr. Weeks's motion because he did not present any arguments that could not have been raised on direct appeal.  See United States v. Weeks, No. 1:08-CR-393-TWT, 2013 WL 3149366, at *1, *3 (N.D. Ga. June 19, 2013).  The district court did not grant Mr. Weeks a certificate of appealability.  Id.

D.  Second Collateral Challenge

In 2016, Mr. Weeks filed an application for leave to file a second or successive § 2255 motion, contending that after the ACCA's residual clause was held unconstitutional in Samuel Johnson v. United States ("Samuel Johnson"), ___ U.S. ___, ___, 135 S. Ct. 2551, 2563 (2015), and Samuel Johnson was determined to apply retroactively on collateral review in Welch v. United States, ___ U.S. ___, ___, 136 S. Ct. 1257, 1268 (2016), he no longer had three ACCA predicates and must be resentenced.  In re Weeks, No. 16-12406 (11th Cir. June 7, 2016).  We granted Mr. Weeks leave to file such a motion, concluding that he had made a prima facie showing that his prior convictions for resisting arrest and assault and

battery no longer qualified as violent felonies under the ACCA, that he no longer had three qualifying predicate convictions, and that he had met the 28 U.S.C. § 2255(h) criteria.  Id. at *6–10.

Mr. Weeks then filed the instant § 2255 motion before the district court.[7] This motion contended that neither the resisting arrest conviction nor the assault and battery conviction counted as ACCA predicates after Samuel Johnson, that he no longer had three predicate convictions, and that he must be resentenced accordingly.  The Government moved to dismiss this motion, arguing that Mr. Weeks could not show that he was sentenced under the residual clause.  No additional Shepard documents were proffered.  The district court granted the Government's motion to dismiss and denied Mr. Weeks's § 2255 motion in a short order, stating in relevant part:

> In this case, the Defendant has not and cannot meet his burden of showing that he was sentenced under the residual clause of the ACCA.  Two of his prior convictions qualified as drug trafficking offenses. At the time of sentencing, the assault and battery and resisting arrest convictions qualified under the elements test as violent felonies.

---

[7] "[I]f a § 2255 movant asserts that his § 2255 motion is timely because he filed it within one year of the Supreme Court's issuance of a decision recognizing a new right, we must determine whether each claim asserted in the motion depends on that new decision."  Beeman, 871 F.3d at 1219.  Samuel Johnson was decided on June 26, 2015.  Mr. Weeks filed his application for leave to file a second or successive § 2255 on May 13, 2016. A panel of this Court granted his motion on June 7, 2016. Mr. Weeks then filed a § 2255 motion before the district court on June 20, 2016, just days before the one-year anniversary of the Samuel Johnson decision.  Mr. Weeks accordingly filed his § 2255 motion within one year of the Supreme Court recognizing a new right in Samuel Johnson.  Moreover, the Government has not argued that Mr. Weeks's motion fell outside of this one-year period.

14

United States v. Weeks, No. 1:08-CR-393-TWT, 2016 WL 9185299, at *1 (N.D. Ga. Dec. 14, 2016).  The district court granted Mr. Weeks a certificate of appealability.

Mr. Weeks appealed, and a non-argument panel of this Court affirmed the district court's dismissal of his § 2255 motion in an unpublished opinion.  Weeks v. United States, 720 F. App'x 1008 (per curiam) (11th Cir.), reh'g granted, op. vacated, Weeks v. United States, 900 F.3d 1310 (11th Cir. 2018).  Mr. Weeks petitioned the panel for rehearing and the panel granted his petition, vacated its opinion, and sent the case to oral argument,  Weeks, 900 F.3d at 1310, which was conducted before this panel.

## II.  DISCUSSION

### A.  Legal Standards

We review legal issues in a § 2255 proceeding de novo.  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004).  Factual issues are reviewed for clear error.  Devine v. United States, 520 F.3d 1286, 1287 (11th Cir. 2008).

In United States v. Beeman, we held that a § 2255 movant raising a Samuel Johnson claim bears the burden of showing, more likely than not, that "it was use of the residual clause that led to the sentencing court's enhancement of his sentence."  871 F.3d 1215, 1221–22 (11th Cir. 2017), cert. denied, 139 S. Ct. 1168 (2019).  That is, the residual clause must have "actually adversely affected the

15

sentence he received." Id. at 1221. Moreover, the residual clause must have been the sole cause for the enhancement. See id. ("Only if the movant would not have been sentenced as an armed career criminal absent the existence of the residual clause is there a [Samuel] Johnson violation. That will be the case only (1) if the sentencing court relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or the elements clause . . . to qualify a prior conviction as a violent felony, and (2) if there were not at least three other prior convictions that could have qualified under either of the two clauses as a violent felony, or as a serious drug offense."). In Beeman, the record was unclear as to whether the residual clause caused the claimant's ACCA enhancement. Id. at 1224. Neither the PSR in making its recommendation nor the sentencing court in announcing Beeman's ACCA-enhanced sentence specified whether the enhancement was based on the elements clause or the residual clause or both. Id. at 1218, 1224. Beeman conceded that there was "nothing in the record suggesting that the district court relied on only the residual clause in sentencing him" and we determined that he failed "to carry his burden of establishing that he, in fact, was sentenced as an armed career criminal here solely because of the residual clause." Id. at 1224. We acknowledged that this allocation of the burden of proof will mean that, whenever the record is silent, the § 2255 movant's claim might fail:

> We do not mean to imply that every sentencing record will lack
> sufficient evidence about whether the district court relied on the

16

residual clause in finding that the defendant was an armed career criminal. Some sentencing records may contain direct evidence: comments or findings by the sentencing judge indicating that the residual clause was relied on and was essential to application of the ACCA in that case. Nor do we mean to suggest that there will not sometimes be sufficient circumstantial evidence to show the specific basis of the enhancement. For example, there could be statements in the PSR, which were not objected to, recommending that the enumerated clause and the elements clause did not apply to the prior conviction in question and did not apply to other prior convictions that could have served to justify application of the ACCA. Or the sentencing record may contain concessions by the prosecutor that those two other clauses do not apply to the conviction in question or others. And there could be other circumstances on which a movant can rely; the above are but a few examples. Each case must be judged on its own facts.

Id. at 1224 & n.4. The Beeman court also noted that Beeman had not pointed to any precedent in existence at the time of sentencing "holding, or otherwise making obvious, that a violation of [the statute of conviction] qualified as a violent felony only under the residual clause." Id. at 1224. On this point we further stated:

> We note that Beeman has likewise pointed to no precedent since 2009 so holding. But even if such precedent had been announced since Beeman's sentencing hearing, it would not answer the question before us. What we must determine is a historical fact: was Beeman in 2009 sentenced solely per the residual clause? And as noted, Beeman bears the burden of proving that historical fact. Certainly, if the law was clear at the time of sentencing that only the residual clause would authorize a finding that the prior conviction was a violent felony, that circumstance would strongly point to a sentencing per the residual clause. However, a sentencing court's decision today that [the statute of conviction] no longer qualifies under present law as a violent felony under the elements clause (and thus could now qualify only under the defunct residual clause) would be a decision that casts very little light, if any, on the key question of

17

historical fact here: whether in 2009 Beeman was, in fact, sentenced under the residual clause only.

Id. at 1224 n.5.

Beeman's sentence was fixed at his sentencing hearing, as he did not challenge his sentence on direct appeal. See id. at 1218 ("Beeman appealed his convictions but not his sentences"). Therefore, the Beeman court could only look to the "historical fact" of what occurred at the sentencing hearing to determine whether the movant "establish[ed] that his sentence enhancement turned on the validity of the residual clause." Id. at 1221 (internal quotation marks and brackets omitted).

In United States v. Pickett, we considered another second § 2255 claimant who was sentenced under the ACCA and subsequently raised a Samuel Johnson claim. 916 F.3d 960, 962 (11th Cir. 2019). As was the case in Beeman, we explained that the parties in Pickett "agree that there is nothing in this record that tells us which clause the district court had in mind when it applied the ACCA enhancement." Id. at 964. Accordingly, "the basic argument on appeal [was] about the state of the law in February 2007 when the ACCA enhancement was applied to Pickett's sentence." Id. at 964. "To overcome Beeman, Pickett need[ed] to show that it is more likely than not that the district court only relied on the residual clause." Id. Specifically, the Pickett court explained that, in addition to showing that the district court relied on the residual clause, the claimant "also

18

needs to show that it is unlikely that the trial court thought the convictions also qualified under the elements clause." Id. at 965.  After surveying the state of the law at the time of Pickett's sentencing hearing, we were "unable to conclude that it is more likely than not that the district court relied only on the residual clause. Faced with this uncertain precedential landscape, the district court likely would have quickly determined that Pickett's battery convictions qualified under the residual clause, but we do not know what else it might have thought." Id. at 966. Faced with this uncertainty, and because Pickett did not have an opportunity in the district court to address the standard announced in Beeman, we remanded his case to the district court that originally imposed the ACCA-enhanced sentence for consideration. Id. at 967.

Like Beeman, Pickett's sentence was fixed at the sentencing hearing, as he did not file a direct appeal of his sentence. See Pickett v. United States, Nos. 10-60720-Civ-Middlebrooks, 06-60304-Cr-Middlebrooks, 2011 WL 1303810, at *2 (S.D. Fla. Feb. 28, 2011) ("The Clerk entered judgment on February 6, 2007.  No direct appeal ensued.").

We address immediately below whether we are bound by the suggestions in Beeman and Pickett that the relevant time frame for determining the precise cause for Mr. Weeks's enhancement is limited to the time of sentencing.  Aside from that issue, Beeman and Pickett establish the following rules for this case: in order to

19

prove his Samuel Johnson claim, Mr. Weeks must prove that, more likely than not, the enhancement of his sentence was caused solely by the residual clause, that is, not also by the elements clause.  In proving this, Mr. Weeks may rely on the relevant record and/or on legal precedent at the relevant time "holding, or otherwise making obvious, that a violation [of the relevant state criminal statute] qualified as a violent felony only under the residual clause."  Beeman, 871 F.3d at 1224.

B.   Are We Bound by Dicta in *Beeman* and *Pickett* that Sentencing is the Only Relevant Time Period for Determining Whether the Sole Cause for Mr. Weeks's Enhanced Sentence Was the Residual Clause, as Opposed to the Elements Clause?

"The holding of a case comprises both the result of the case and those portions of the opinion necessary to that result."  United States v. Caraballo-Martinez, 866 F.3d 1233, 1244 (11th Cir.) (internal quotation marks omitted), cert. denied, 138 S. Ct. 566 (2017).  "We have pointed out many times that regardless of what [our] court says in its opinion, the decision can hold nothing beyond the facts of that case."  Edwards v. Prime, Inc., 602 F.3d 1276, 1298 (11th Cir. 2010) (collecting cases).  Neither Beeman nor Pickett addressed a situation where the enhancement to the claimant's sentence did not become fixed at the sentencing hearing because it was challenged and thus subject to change on direct appeal.  Accordingly, neither opinion contains a holding that controls the question presented in this case.

20

Both Beeman and Pickett contain language that can be read to mean that the only relevant time period that may be considered in a § 2255 motion raising a Samuel Johnson claim is the "historical fact" of what occurred at the sentencing hearing. See Pickett, 916 F.3d at 964–65 ("Whether the residual clause was the basis for the sentencing court's enhancement is a question of 'historical fact.' . . . Decisions that came down after the sentencing would 'cast[] very little light, if any, on the key question of historical fact.'" (quoting Beeman, 871 F.3d at 1224 n.5)). As discussed above, the holdings in Beeman and Pickett did not, and could not, extend to instances where the claimant challenged the enhancement of his sentence on direct appeal. Thus, to the extent Beeman and Pickett suggest that the only relevant time period that may be considered in any § 2255 motion raising a Samuel Johnson claim is the "historical fact" of what occurred at the sentencing hearing, such language is dicta and does not bind this panel. See Caraballo-Martinez, 866 F.3d at 1244 ("[D]icta is defined as those portions of an opinion that are not necessary to deciding the case then before us." (citation omitted)).[8]

---

[8] We acknowledge that many of our sister circuits have also held that a § 2255 claimant carries the burden of proof of establishing that the sentencing court relied on the residual clause in enhancing the claimant's sentence. Many of them, like Beeman and Pickett contain language referencing the sentencing court as the focus of this inquiry. However, like Beeman and Pickett, these cases considered claimants who did not challenge their ACCA enhancements on direct appeal. See United States v. Clay, 921 F.3d 550, 553 (5th Cir. 2019), as revised (Apr. 25, 2019); Golinveaux v. United States, 915 F.3d 564, 568 (8th Cir. 2019); Lofton v. United States, 920 F.3d 572, 575 (8th Cir. 2019); Garcia-Hernandez v. United States, 915 F.3d 558, 560 (8th Cir. 2019); United States v. Copeland, 921 F.3d 1233, 1242 (10th Cir. 2019); Dimott v. United States, 881 F.3d 232, 243 (1st Cir. 2018), cert. denied sub nom. Casey v. United States, 138 S.

C.   If Not Bound by *Beeman* and *Pickett*, is it Appropriate in this Case to Consider the Record Developments and the Legal Framework Through the Time of Direct Appeal?

Having concluded that we are not bound by prior precedent to consider solely the timeframe of the sentencing hearing, we must determine whether we may consider the period of direct appeal.  We hold that when a claimant challenges his ACCA enhancement on direct appeal, we may, in a later § 2255 motion raising a Samuel Johnson claim, consider the time period of the direct appeal.  The central focus in Beeman was that in order "[t]o prove a [Samuel] Johnson claim, a movant must establish that his sentence enhancement 'turned on the validity of the residual clause.'  In other words, he must show that the clause actually adversely affected the sentence he received."  871 F.3d at 1221 (brackets omitted).  That is, a Samuel Johnson claimant must show that the residual clause was the sole cause of his having received the enhancement of his sentence, as opposed to the enhancement having been based also on, or solely on, the elements clause and/or the enumerated offense clause.  Where a claimant has challenged his ACCA-enhanced sentence on direct appeal, the "basis for the . . . enhancement," Pickett, 916 F.3d at 963, was not yet fixed at the time of sentencing, cf. Barefoot v. Estelle, 463 U.S. 880, 887,

Ct. 2678 (2018); United States v. Wiese, 896 F.3d 720, 724 (5th Cir. 2018), as revised (Aug. 14, 2018), cert. denied, 139 S. Ct. 1328 (2019); Potter v. United States, 887 F.3d 785, 787–88 (6th Cir. 2018); Walker v. United States, 900 F.3d 1012, 1014 (8th Cir. 2018).  We are not aware of any precedent from our sister circuits addressing the unique question presented to us in this case.

22

103 S. Ct. 3383, 3392 (1983) (explaining that when the process of direct review "comes to an end, a presumption of finality and legality attaches to the . . . sentence"), superseded on other grounds by statute, 28 U.S.C. § 2253, as recognized in Slack v. McDaniel, 529 U.S. 473, 483, 120 S. Ct. 1595, 1603 (2000). Because the basis for the enhanced sentence did not become fixed until after the direct appeal, it is necessary in such a case to look to the record and binding precedent through the time of direct appeal to determine whether the claimant has shown "that—more likely than not—it was use of the residual clause that led to the . . . enhancement of his sentence." See Beeman, 871 F.3d at 1222. Accordingly, we hold that when a § 2255 movant raising a Samuel Johnson claim has challenged his ACCA sentence enhancement on direct appeal, the § 2255 court may consider the record through the time of the direct appeal, and the relevant legal precedent through that time in determining whether the claimant has proved more likely than not that his enhancement was caused solely by the residual clause.

Contrary to the Government's position at oral argument, our holding is not an erosion of the standard set forth in Beeman and applied in Pickett.  A § 2255 claimant raising a Samuel Johnson claim and referencing evidence from the period of direct appeal must still "show that it is more likely than not" that the direct appeal panel could have "only relied on the residual clause."  See Pickett, 916 F.3d at 964.  The essential focus of the Beeman test is whether the sentence

23

enhancement of the <u>Samuel Johnson</u> claimant was caused <u>solely</u> by the residual clause.  When such claimant has challenged his enhancement on direct appeal, common sense dictates that the direct appeal must be considered to ascertain the ultimate cause of the enhancement.[9]  Our holding is entirely consistent with <u>Beeman</u> and <u>Pickett</u>; indeed, it would be inconsistent with the essential focus of those cases to close our eyes to the ultimate cause of the enhancement as revealed on direct appeal.

The same type of potential evidence is available to the parties through the direct appeal stage as was available in <u>Beeman</u> at the sentencing stage.  By way of example, a claimant who has challenged his enhanced sentence on direct appeal may point to the appellate opinion, concessions made by the parties, or legal precedent through the time of the direct appeal making it more likely than not that <u>only</u> the residual clause could have formed the basis for his ACCA enhancement. <u>Cf.</u> <u>Beeman</u>, 871 F.3d at 1224 & nn. 4–5.  An appellate opinion that merely cites to the residual clause in affirming the claimant's ACCA enhancement and does not address whether the elements clause could also serve as a basis for the

---

[9] For example, imagine a <u>Samuel Johnson</u> § 2255 claimant whose case presents the following facts.  The district court expressly ruled that the claimant's prior conviction is an ACCA predicate under the elements clause and declined to address the Government's argument that the conviction also qualified under the residual clause.  The claimant challenged the enhancement on direct appeal.  In that appeal, we held that the conviction is not an ACCA predicate under the elements clause, but affirmed the ACCA enhancement because we agreed with the Government that the conviction qualified under the residual clause.  In such a case, it would make no sense to limit the <u>Beeman</u> temporal inquiry to the district court sentencing hearing.

24

enhancement will not carry a claimant's burden unless there is other evidence making it more likely than not that <u>only</u> the residual clause was relied upon. <u>See</u> <u>Pickett</u>, 916 F.3d at 963 ("Put simply, it must be more likely than not that the sentence was based on the residual clause and <u>only</u> the residual clause.").

In this case, Mr. Weeks did appeal his sentence and did argue on direct appeal that his resisting arrest and assault and battery prior convictions did not qualify as violent felonies. <u>Weeks</u>, 442 F. App'x at 454–56. Accordingly, we may consider not only the record evidence during sentencing, but also things such as briefs filed before the direct appeal panel, that panel's order, and relevant legal precedent through the period of direct appeal to determine whether it is more likely than not that the residual clause, and only the residual clause, led to Mr. Weeks's ACCA-enhanced sentence. We turn now to that issue, considering first the resisting arrest prior conviction, and then the assault and battery prior conviction.

### D.  Resisting Arrest Conviction

We first consider Mr. Weeks's prior conviction for resisting arrest. At the time of Mr. Weeks's conduct, the Massachusetts resisting arrest statute provided

(a)    A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:

   (1)    using or threatening to use physical force or violence against the police officer or another; or

25

(2)    using any other means which creates a substantial risk of causing bodily injury to such police officer or another.

Mass. Gen. Laws ch. 268, § 32B(a).  The Government did not introduce Shepard documents at sentencing and the sentencing court did not clearly indicate whether Mr. Weeks's prior resisting arrest conviction rested upon a violation of § 32B(a)(1) or (a)(2).  The sentencing court, in counting this prior conviction as an ACCA predicate, merely indicated that "[i]n the absence of extremely persuasive authority, I think that I should follow the [First] Circuit authority."  The relevant First Circuit case law cited in sentencing memoranda or at the sentencing hearing held that a conviction under § 32B qualified as a crime of violence under the Sentencing Guidelines.  United States v. Almenas, 553 F.3d 27, 33–35 (1st Cir. 2009).  Specifically, the First Circuit indicated that § 32B(a)(1) fell within the elements clause while § 32B(a)(2) fell within the residual clause.  Id.  In light of our decision in the next paragraph of this opinion—concluding on the basis of the decision of this Court in Mr. Weeks's direct appeal and on the basis of binding legal precedent at that time that Mr. Weeks has established that it is more likely than not that his prior conviction for resisting arrest was counted as an ACCA predicate solely because of the residual clause—we need not decide whether the sentencing court also relied solely on the residual clause.

As we have made clear, Mr. Weeks's sentence did not become fixed at sentencing.  Therefore, we can consider the record through the direct appeal stage

26

and the relevant legal precedent through that time.  On direct appeal, the panel considered whether Mr. Weeks's resisting arrest prior conviction qualified under the ACCA.  It commented on the "significant risk of injury" posed by the offense, citing Almenas.  Weeks, 442 F. App'x at 456.  In concluding that the offense counted as an ACCA predicate, it stated: "Weeks has failed to establish that resisting arrest by 'using any other means which creates a substantial risk of causing bodily injury to such police officer or another,' § 32B(a)(2), can be committed without 'present[ing] a serious potential risk of physical injury to another,' § 924(e)(2)(B)."  Id.  Although the opinion did not expressly disavow any reliance on the elements clause, we know that there was absolutely no basis on which the direct appeal panel could have relied on the elements clause in affirming this conviction as an ACCA predicate.  There were no Shepard documents on the basis of which the direct appeal panel could possibly have considered that the elements clause was satisfied.  As noted above, the Supreme Court issued its Curtis Johnson decision on March 2, 2010, six days after Mr. Weeks's sentencing on February 24, 2010.  In Curtis Johnson, the Supreme Court had made clear that, where Shepard documents do not make clear which version of the offense was committed, a sentencing court must presume that it rested upon the least of the acts criminalized by the statute.  See Curtis Johnson, 559 U.S. at 137, 130 S. Ct. at 1269.  Accordingly, this court on direct appeal must have presumed that Mr.

27

Weeks's prior resisting arrest conviction rested upon § 32B(a)(2).  See Thorpe v. Hous. Auth. of City of Durham, 393 U.S. 268, 281, 89 S. Ct. 518, 526 (1969) ("The general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision.").  Section 32B(a)(2) largely tracks the residual clause and obviously does not satisfy the elements clause.  Compare § 32B(a)(2) ("using any other means which creates a substantial risk of causing bodily injury to such police officer or another"), with § 924(e)(2)(B)(ii) ("otherwise involves conduct that presents a serious potential risk of physical injury to another"), and § 924(e)(2)(B)(i) ("has as an element the use, attempted use, or threatened use of physical force against the person of another").  Accordingly, considering what occurred or was otherwise made obvious by binding precedent through the timeframe of direct appeal, we conclude that Mr. Weeks's prior resisting arrest conviction was counted as an ACCA predicate solely because of the residual clause.  The ultimate cause of the enhancement as determined by the direct appeal panel was solely the residual clause.  Thus, we conclude that Mr. Weeks has carried his burden of showing that it is more likely than not that this offense was counted as an ACCA predicate solely because of the residual clause.[10]  Because

---

[10] Indeed, the Government's brief to this panel concedes that the direct appeal panel held that Mr. Weeks's resisting arrest conviction qualified as an ACCA predicate under the residual clause; and the Government did not argue in this § 2255 case, either in the district court or on appeal to us, that Mr. Weeks had not established his Samuel Johnson claim with respect to his resisting arrest prior conviction.

Mr. Weeks still has three potential predicate convictions not counting his resisting

arrest conviction, we must proceed to consider whether his prior assault and battery

conviction was also counted as an ACCA predicate solely because of the residual

clause.

E.  Assault and Battery Conviction

We next consider Mr. Weeks's prior conviction for assault and battery.  At

the time of Mr. Weeks's conduct, Massachusetts law provided that:

> Whoever commits an assault or an assault and battery upon
> another shall be punished by imprisonment for not more than two and
> one half years in a house of correction or by a fine of not more than
> five hundred dollars.

Mass. Gen. Laws ch. 265, § 13A (amended 2002).  This statute "encompasses

three common law crimes: harmful battery, reckless battery, and offensive

battery."  Eberhart, 461 Mass. at 818, 965 N.E.2d at 798.

> Harmful battery is "[a]ny touching 'with such violence that bodily
> harm is likely to result'. . . ."  Reckless battery is a "wilful, wanton
> and reckless act which results in personal injury to another."
> Offensive battery occurs when "the defendant, without justification or
> excuse, intentionally touched the victim, and . . . the touching,
> however slight, occurred without the victim's consent."

Id. (citations and footnote omitted).

At Mr. Weeks's sentencing hearing, the sentencing court stated, "I think that

I should follow the [First] Circuit authority in this area which as I understand it

would count all of those convictions for the armed career criminal enhancement."

29

Although the sentencing court did not explain its reasoning in more detail with respect to Mr. Weeks's assault and battery conviction, presumably this meant that it was following United States v. Rivera, 562 F.3d 1, 1 (1st Cir. 2009), which was cited by the Government.  Rivera reaffirmed the First Circuit's rule that the "'did assault and beat' charging language suffices to identify the 'harmful' brand of assault and battery, qualifying the offense as a violent felony under the ACCA." 562 F.3d at 1.  The First Circuit, imposing its own construction upon the "did assault and beat" charging language, had previously determined that this charging language identified "harmful" battery and qualified as a crime of violence under U.S.S.G. § 4B1.2.  See Mangos, 134 F.3d at 464.  Harmful battery is "[a]ny touching 'with such violence that bodily harm is likely to result.'"  See Burke, 390 Mass. at 482, 457 N.E.2d at 624.  Accordingly, there is nothing in the record from the time of Mr. Weeks's sentencing hearing that makes it "more likely than not that the district court relied only on the residual clause."  See Pickett, 916 F.3d at 966.[11]

Because Mr. Weeks's sentence did not become fixed at sentencing, this panel proceeds to consider what occurred or was made obvious by relevant legal precedent during the time frame of his direct appeal.  Because the direct appeal

---

[11] At oral argument, Mr. Weeks's counsel conceded that the state of First Circuit law at the time of sentencing was that the charging language "did assault and beat" was sufficient to meet the elements clause. Oral Argument at 5:54–6:12. That the sentencing court may have relied on the elements clause does not control our analysis because Mr. Weeks's sentence was not fixed at sentencing and was subject to change on direct appeal.

panel had already concluded that Mr. Weeks had three ACCA predicates, it did not reach his assault and battery conviction on direct appeal. See Weeks, 442 F. App'x at 456. Accordingly, there is no direct evidence in the record on appeal making clear that Mr. Weeks's assault and battery conviction qualified as a violent felony only under the residual clause.

However, in the unique circumstances of this case, there is significant circumstantial evidence in the form of relevant legal precedent at the time that Mr. Weeks's direct appeal was pending which makes it apparent that Mr. Weeks's assault and battery conviction could only qualify as a violent felony under the residual clause. Just a few days after Mr. Weeks's sentencing hearing, the Supreme Court handed down its Curtis Johnson opinion. Curtis Johnson made clear that we must look to state law in interpreting prior state convictions, including determining the elements of an offense. 559 U.S. at 138, 130 S. Ct. at 1269. It also made clear that, where the record does not indicate which version of the offense was committed, a sentencing court must presume that the prior conviction rested upon the least of the acts criminalized by the statute. See id. at 137, 130 S. Ct. at 1269. Finally, the Court stated: "We think it clear that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." Id. at 140, 130 S. Ct. at 1271.

31

Curtis Johnson—issued just a few days after Mr. Weeks's sentencing—made clear that state law should control a federal court's interpretation of the Massachusetts assault and battery offense.  See Curtis Johnson, 559 U.S. at 138, 130 S. Ct. at 1269–70.  Massachusetts law has indicated that assault and battery—regardless of whether it is of the harmful, reckless, or offensive variety—is sufficiently alleged in a criminal complaint that states "[t]hat A.B. did assault and beat C.D."  See Mass. Gen. Laws ch. 277, § 79.  Accordingly, a criminal complaint alleging that a defendant "did assault and beat" a victim can, under Massachusetts law, charge offensive battery where the defendant intentionally touched a victim, however slightly, without the victim's consent and without justification or excuse. See Eberhart, 461 Mass. at 818, 965 N.E.2d at 798–99.

Thus, Massachusetts law at the time made clear that "did assault and beat" charging language did not necessarily mean that a defendant was charged with harmful battery.  See Mass. Gen. Laws ch. 277, § 79.  In his direct appeal, Mr. Weeks made this argument based on Massachusetts law and relied on the just-issued Holloway decision of the First Circuit.  The Holloway decision explained:

> We look to state law. According to the Massachusetts statute prescribing the proper form of criminal indictments and complaints, the following language is sufficient to charge an assault and battery: "That A.B. did assault and beat C.D." Mass. Gen. Laws ch. 277, § 79. The statute does not break the offense down into its various types nor does it provide charging language specific to those types. Consequently, a sentencing court may not rely on the generic "did assault and beat" charging language to identify which particular

32

> battery offense served as the offense of conviction. It is clear under state court construction of the statute that the statute encompasses a category of offenses which are no more than offensive touchings.

Holloway, 630 F.3d at 260; see also Eberhart, 461 Mass. at 819 n.14, 965 N.E.2d at 799 n.14 (citing with approval Holloway's holding that the "assault and beat" language in a Massachusetts indictment is insufficient to prove that the defendant committed a violent felony).[12]

It is clear that, at the time of direct appeal a federal court could no longer rely upon the criminal complaint's "assaulted and beat" language to determine which version of assault and battery Mr. Weeks was charged. Moreover, there were no Shepard documents on which the direct appeal panel could have relied to affirm the sentencing court on the basis of the elements clause. Because it could not rely on the "assault and beat" language or any Shepard documents to support affirmance on the basis of the elements clause, the direct appeal panel was required by Curtis Johnson to presume that Mr. Weeks's prior conviction "rested upon . . . the least of these acts." See 559 U.S. at 137, 130 S. Ct. at 1269. Accordingly, the direct appeal panel would necessarily have had to presume that Mr. Weeks was charged with offensive battery—i.e., that he intentionally touched his victim,

---

[12] Accord United States v. Jones, 235 F.3d 342, 347 (7th Cir. 2000) ("As the government points out, the phrase 'did assault and beat' is the standard charging language for all assault and battery charges in Massachusetts. As a result, no inference regarding whether Jones committed a crime of violence can be drawn from the charging document's use of the phrase 'did assault and beat.'" (citations omitted)).

however slightly, without the victim's consent and without justification or excuse. See Eberhart, 461 Mass. at 818, 965 N.E.2d at 798–99. Curtis Johnson also made clear that a battery statute covering intentional physical contact, however so slight, does not qualify as a violent felony under the ACCA's elements clause. See 599 U.S. at 140, 130 S. Ct. at 1271. Thus, the relevant legal precedent from the time of direct appeal makes it obvious that Mr. Weeks's assault and battery conviction could only have counted as an ACCA predicate under the residual clause and could not have counted under the elements clause.

Accordingly, even though the sentencing court may have relied also on the elements clause, we know that the direct appeal panel could have affirmed counting Mr. Weeks's assault and battery conviction as an ACCA predicate only on the basis of the residual clause, and we know that it could not have affirmed on the basis of the elements clause. We thus conclude that Mr. Weeks has established that it is more likely than not that the ultimate reason that his assault and battery conviction was counted as an ACCA predicate was based solely on the residual clause.

## III.  CONCLUSION

In sum, in a § 2255 motion asserting a Samuel Johnson claim where the claimant challenged his ACCA sentencing enhancement on direct appeal, we hold that it is appropriate to consider the record of what transpired at sentencing and

34

through the pendency of the direct appeal, as well as the legal landscape through that time. Having considered what occurred or was otherwise made clear by relevant precedent through the time of Mr. Weeks's direct appeal, we conclude that he has carried his burden of showing that it is more likely than not that the residual clause, and only the residual clause, caused his sentence to be enhanced.

With respect to both of Mr. Weeks's prior convictions—resisting arrest and assault and battery—he has established that the direct appeal panel could only have relied on the residual clause to support the application of the ACCA enhancement and could not possibly have relied on the elements clause. And because we now know from Samuel Johnson that the residual clause is unconstitutionally vague, it necessarily follows that Mr. Weeks's prior conviction for resisting arrest, and his prior conviction for assault and battery, can no longer count as ACCA predicates. Because Mr. Weeks had only two other ACCA predicates, he no longer has three qualifying ACCA predicate convictions and the ACCA enhancement of his federal sentence must therefore fail. Accordingly, the judgment of the district court dismissing Mr. Weeks's § 2255 motion must be reversed, and this case must be remanded to the district court for resentencing.

REVERSED AND REMANDED.

35